RALPH COFFMAN *et al. v.* THE BANK OF KENTUCKY.

1. BILLS OF EXCHANGE: DRAWN IN THIS STATE AND PAYABLE IN LOUISIANA, BY WHAT LAW GOVERNED.—The liability of the·drawer of a bill of exchange drawn in this State, and addressed to and accepted by parties in Louisiana, is governed by the laws of Louisiana, and the defence of failure or illegality of consideration, or payment, cannot be set up by the drawer against a bonâ fide holder, without notice. *Fellows* v. *Harris*, 12 S. & M. 462. *Emanuel* v. *White*, 34 Miss. R. 56.

2. SAME : PAYMENT AFTER MATURITY WITHOUT REQUIRING PRODUCTION OF BILL.—The failure to produce a bill of exchange at the time of its payment by the drawer to the original holder, is sufficient to put the drawer on inquiry, and to lead him to notice of the transfer of the bill, and such payment, though made after maturity, is no defence against the holder.

3. SAME : NOTICE OF PROTEST : OBJECT OF : BY WHOM SIGNED.—The object of notice of the protest of a bill of exchange, is to give notice to the parties to the bill of its dishonor, and if signed by the notary is sufficient.    It need not be signed by the party who gives the notice.

4. SAME : NOTICE OF PROTEST : ADDRESSED TO CASHIER OF BANK.—Notice of the protest of a bill of exchange, indorsed by a bank, may be addressed to its cashier.

ERROR to Circuit Court of Yalobusha county.    Hon. Wm. Cothran, judge.

The action in the court below was founded on the following bill of exchange :

"Exchange for $840.50.

"GRAYSPORT, Miss., June 5, 1854.

"Eight months after date of this my first of exchange (second unpaid), pay to the order of Hilary Talbert, eight hundred and forty and $\frac{50}{100}$ dollars.    Value received.

"F. E. WILLIS.

"To McRae, Coffman & Co., }
    New Orleans, La." }

Accepted.    McRae, Coffman & Co.
Endorsed.    Hilary Talbert.
Endorsed.    Pay R. G. Palfrey, cash'r, or order.
J. H. Van Culin, cashier.

Coffman et al. *v.* Bank of Kentucky.

The pleadings and evidence in the cause are set forth in the opinion of the court.

*J. Z. George* for plaintiffs in error.

*Jno. W. C. Watson* for defendant in error.

HANDY, C. J., delivered the opinion of the court.

This action was brought on a bill of exchange drawn at Graysport, in this State, by F. E. Willis, payable to, and endorsed by, Hilary Talbert, on McRea, Coffman & Co., of New Orleans, Louisiana, and endorsed by J. II. Van Culin, cashier, and J. H. Palfrey, cashier. It was brought against the drawer and Talbert and Coffman, and judgment was rendered against them; but the writ of error is sued out in the name of the defendant Willis alone.

The case is brought up on a bill of exceptions taken to the action of the court below in overruling the defendants' motion for a new trial. The grounds of that motion are: 1. That the court excluded certain evidence offered on the part of the defendants; and, 2. That the verdict was not sustained by the evidence.

The first error here assigned, is the exclusion of the evidence referred to in the motion in the court below.

This evidence was, in substance, that the bill sued on was given to McRea, Coffman & Co., to settle a balance claimed to be due them from the drawer, Willis, which was composed of 2½ per cent. for advancing moneys for the drawer, and 2½ per cent. for accepting, and eight per cent. for loan of moneys and for acceptances of bills of exchange for and on account of the drawer; and further, that after the maturity of the bill, it was paid to McRae, Coffman & Co. by an agent of the drawer, which agent was ignorant that the bill had been negotiated and assigned.

The bill, though drawn in this State, was payable in Louisiana, and was endorsed, before maturity, to the Bank of Kentucky. The rights of the holder are, therefore, not governed by the law

of this State, which would have allowed the defence set up'on a negotiable instrument payable in this State; but are governed by the general principles of the commercial law, which prevail in the State of Louisiana. And the defence of failure or illegality of consideration, arising in virtue of provisions of our laws, is not available in an action on such a bill brought by a *bonâ fide* endorser of it without notice. *Fellows* v. *Harris,* 12 S. & M. 462; *Emanuel & Barnett* v. *White,* 34 Miss. 56. The evidence offered as to the usury of the transaction was, therefore, properly rejected.

As to the alleged payment by the drawer to the acceptors after maturity, it appears by the evidence in the record, that it was made after the bill had been negotiated to the Bank of Kentucky, and the proposed evidence shows that it was after its maturity. If paid, it was without the production of the bill, which itself was sufficient to put the drawer on inquiry, and to lead him to notice of the transfer of it; and if he paid it without the production of the bill, it was gross negligence, and must be considered as done in his own wrong. Certainly such a payment cannot affect the rights of the holder; for it was the duty of the drawer to require the production of the bill before paying the money due on it.

The second error assigned is, that the evidence is not sufficient to support the verdict; and, under this assignment, it is insisted, in the first place, that there was no evidence that the notice of dishonor of the bill was sent to the proper post-office of the drawer.

This position is founded in mistake in point of fact. The record shows that the notice to the drawer was sent to Graysport, in this State, and the bill of exceptions shows that it was admitted by the defendants, on the trial, that that was the proper post-office of the drawer in 1855, when the bill was protested.

2. It is objected that the notice was sent to Hopkinsville, Kentucky, addressed to Van Culin, cashier, when it should have been given to him at New Orleans, where he resided at the time.

The record shows that the bill was the property of the Bank of Kentucky, and that it was endorsed for collection by Van Culin, as cashier of that bank, and that at the time of its maturity, he had ceased to be an officer of the bank, but resided in New Orleans—that the notices were addressed and sent on the next day after the protest to Van Culin, cashier, at Hopkinsville, and were taken from the post-office there by the officer of the Bank of Kentucky on the day they reached there by mail, and were transmitted by mail on the next day to the drawer and first endorser. It appears that the notices were addressed to Van Culin, at Hopkinsville, by the notary at New Orleans, by the instruction of the cashier of the Bank of Louisiana, who was the holder of the bill, for collection, and who was the last endorser on it.

The notice, then, was in fact given to the last endorser in New Orleans, who caused notices to be sent to his prior endorser, at the place from which he received it for collection, and the notices were actually received there by the bank and were duly transmitted to the drawer and first endorser. It is immaterial by what hand the notices were placed in the post-office at Hopkinsville. It is sufficient that they were signed by the notary, an officer whose duty it was to make the protest and who was empowered to give notice for the holder. Story on Bills, § 388. If the notice had been given to Van Culin, in New Orleans, he could, in all probability, have done nothing more than to communicate it to the Bank of Kentucky; and that was done by the notary. It was, then, useless to give him notice; for he had been acting in the matter only as agent, and his agency had ceased. The notice sent to the bank was, therefore, proper for her own protection, and to enable her to transmit the notices received by her so as to fix the liability of the drawer and first endorser.

It is said that, if the bank was the real holder, the notice should have been given to her and not addressed to Van Culin, as cashier. Substantially it was addressed to the bank, by being addressed to her cashier; and it was received by the bank as if it had been formally addressed to her, and that is all

that was necessary; for the object of the notice to her was, that she might protect herself by transmitting notices to the prior parties.

Again—it is said that the bank should have given notice, in her own name, to the prior parties to the bill.   The object of the notice, so far as those parties were interested, was to apprise them that the bill had not been paid, and the notices signed by the notary, an officer authorized by law to perform that duty, were certainly sufficient for that purpose.   And if the bank, after receiving notice of the dishonor of the bill, was authorized to give notice to the prior parties, and that would have been sufficient to charge them, it was clearly sufficient, if, in due time, she transmitted to them the notices received by her from the notary, signed ·by him and addressed to them ; for there could be no more certain or solemn mode of informing them of the fact that the bill had not been paid, than the certificate of the officer whose duty it was to protest it.

Let the judgment be affirmed.