No. 1462.—Succession of H. E. A. DOLHONDE, opposition of LOUISIANA MUTUAL INSURANCE COMPANY to the Account of Natural Tutrix.

One partner cannot sue the other for a specific sum until the affairs of the partnership have been liquidated. The liquidating partner of a commercial firm cannot be called in warranty by the administrator on a demand against the estate of a deceased partner.

The holder of a promissory note, deposited before maturity, to secure the payment of a pre-existing debt, has a right to sue for and recover the whole amount.

A, a member of the commercial firm of A & B, executed his two promissory notes, payable to his own order and by him indorsed in blank, secured by mortgage on his individual property. A placed the notes in the hands of the commercial firm of A & B, who deposited them in pledge with C, to secure the payment of a note of the firm. The note of the firm was taken up by them together with the mortgage notes held as collateral security; *Held by the Court*—That the mortgage given to secure the notes of A, was not extinguished by confusion, they not having been returned into his hands. That the fact that they were returned into the hands of the firm of which A was a member did not place them in his individual hands, and the mortgage still exists.

APPEAL from the Second District Court of New Orleans, *Thomas*, J. *P. Chas. Cuvellier* for Tutrix, Appellee. *Clarke & Bayne,* for Louisiana Mutual Insurance Company, Appellant.

LUDELING, C. J. H. E. A. Dolhonde was a member of the commercial firm of John S. Wallis & Co.

On the seventeenth day of July, 1865, he executed an authentic act, in which he acknowledged that he was justly and truly indebted to J. M. Crawford in the sum of twelve thousand dollars; that for the reimbursement thereof he had made and signed two promissory notes, dated same day, to the order of and endorsed by himself, each for six thousand dollars, payable two years after date, at the Canal Bank in this city, and bearing seven per cent. per annum interest from maturity· and that to secure the payment of the notes he mortgaged certain property in favor of J. M. Crawford, etc. The notes were paraphed by the notary.

The evidence shows that J. M. Crawford had no interest whatever in the notes, that he signed the act of mortgage at the request of Mr. Dolhonde, and that he never had possession of the notes.

On the twenty-fifth of July, 1865, the firm of John S. Wallis & Co. obtained from Pike, Lapeyre & Brother, a loan of ten thousand dollars for thirty days, on the pledge of an envelope containing some un-

current bank bills and the mortgage notes, and in due time Wallis & Co. redeemed their pledge. On the tenth of October, 1865, the firm of Wallis & Co. obtained from the Louisiana Mutual Insurance Company a loan of $8,000, for which amount the firm executed a note payable *on demand.*

About the middle of December, 1865, the Louisiana Mutual Insurance Company *demanded payment of the note,* or *security;* and Dolhonde said "the *firm* would secure the note by a pledge of *mortgage paper,* as collateral security."

Sometime in the year 1866, Dolhonde died. His widow was confirmed as natural tutrix of his minor children. She caused the property of the succession to be sold, and filed an account and tableau of distribution which was opposed by the Louisiana Mutual Insurance Company on the ground that they are the legal owners and holders of the two mortgage notes, already described, and that as such they are entitled to be paid by preference out of the proceeds of the sale of the mortgaged property, and that the tutrix has failed to place them upon the tableau.

To this opposition the tutrix filed an answer, in which she denies the allegations made in the opposition, and she avers the ownership of the notes to be in the deceased, and consequently the nullity and extinguishment of the notes and the mortgage. She calls John S. Wallis, surviving partner and liquidator of the firm, in warranty.

John S. Wallis excepted to the call in warranty, for the following, among other reasons given, to wit: "there has been no final liquidation of the partnership affairs."

By agreement the exception was referred to the merits.

The exception ought to have been sustained. 10 Mart. 433. 8 N. S. 281 11 An. 509.

It appears that the Louisiana Mutual Insurance Company received these notes before maturity, and in due course of their business, as a pledge to secure the payment of a subsisting debt. The secretary of the Insurance Company, in giving his testimony, says, "When I insisted on the security, the pledge was given"—"When I applied for the amount of the note, Mr. Dolhonde told me the firm would give some mortgage notes as collateral security." The president of the company says, "six per cent. is a fair rate of interest on *call loan notes.* It is important for offices like ours to have money lent on short time, so that it might be called in promptly."

The counsel for the tutrix and appellee admits that the commercial law protects the *bona fide* holder of negotiable paper, received before maturity, against equities existing between the maker and the payee; but he insists that there are exceptions to this rule, and he claims that the case at bar constitutes one of the exceptions, because the notes sued on were given as *collateral security for the payment* of a *pre-existing debt.*

In Swift *vs.* Tyson, 16 Peters, p. 20, Judge Story as the organ of the

court said, "We have no hesitation in saying, that a *pre-existing debt does constitute a valuable consideration*, in the sense of the general rule already stated, as applicable to negotiable instruments. * * *

"The question has been several times before this court, and it has been uniformly held that it makes no difference whatsoever, as to the rights of the holder, whether the debt for which the negotiable instrument is transferred to him, is a pre-existing debt, or is contracted at the time of the transfer. In each case he equally gives credit to the instrument.

"Every person is, in the sense of the rule, treated as a *bona fide* holder for value, not only when he has already advanced money, or other value for it; but when he has received it in payment of a precedent debt, or when he has a lien on it, or has taken it as a collateral security for a precedent debt, or for future, as well as for past advances." Story on Promissory Notes, § 195.

By the Civil Code, Art. 1887 the obligations which can have no effect are those which are *without a cause*, or which have *a false* or *unlawful cause*.

By the cause of the contract is meant the *consideration* or *motive* for making it. What then was the *cause, consideration* or *motive* for making the pledge? Evidently an extension of the credit or forbearance to sue. There was a cause, therefore, which was neither false nor unlawful. The cause was sufficient. 5 N. S. 562. 12 R. 378. 8 An. 97.

The notes were pledged in conformity to law, and the pledgee had a right to sue for the recovery of the amount thereof. Acts of 1866, p. 266. King *v.* Gayoso, 8 N. S. 370.

It was held in Matthews *v.* Rutherford, that in the commercial law the only difference between the absolute holder for value, and the party who takes the note as collateral security, so far as the right of recourse against the maker is concerned, was that the former may recover in full, whilst the latter, if there be equities, is restricted to the extent of his debt. He is considered a purchaser in good faith *pro tanto.* 7 An. 225.

It is urged that the notes were returned to the *maker* after they had been pledged to Pike, Lapeyre & Brother, and that, at least, the mortgage had been extinguished by confusion. The proof, on the contrary, is that John S. Wallis & Co. pledged the notes to Pike, Lapeyre & Brother, and that the firm of John S. Wallis & Co. redeemed the pledge, and the notes and other property pledged were returned to them through John S. Wallis. The secretary of the Louisiana Mutual Insurance Company says, "I asked security of Mr. Dolhonde, and they were handed to me by Mr. J. S. Wallis—all I know is that these notes came from Mr. J. S. Wallis. I understood Mr. Dolhonde, when he said he would give me mortgage paper, that it was paper over which he had control *as a member of the firm* of John S. Wallis and Company. When treating with Dolhonde I was treating with John S. Wallis & Co."

But we are not prepared to admit that the mortgage would have been extinguished, as between Dolhonde and the Louisiana Mutual Insurance Company, even if it had been proved that the notes had been returned to the possession of Dolhonde individually. The Louisiana Mutual Insurance Company was ignorant of the fact, and Dolhonde himself represented that the notes were secured by a mortgage.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be avoided and reversed, and that the opposition of the Louisiana Mutual Insurance Company to the account and tableau of distribution filed by Marie Fourcade, widow of H. E. A. Dolhonde, deceased, and natural tutrix of her minor children, be sustained to the extent of eight thousand dollars, with six per cent. per annum interest thereon from the tenth of October 1865, with privilege upon the proceeds of the sale of the property mortgaged to secure the notes sued on. And it is further ordered that the tableau be amended, and that the Louisiana Mutual Insurance Company be placed upon said tableau as mortgage creditors, to be paid by preference over all other mortgage creditors except Lafitte, Dufilho & Co., and the New Orleans Mutual Insurance Company.

It is further ordered that the succession pay the costs of both courts.