RICHARD F. HARRISON et al. v. PIKE BROTHERS & Co.

1. PROMISSORY NOTES—INDORSEMENTS—LAW MERCHANT.—By the law merchant, the indorser of a promissory note or bill of exchange, who has paid a consideration for it, takes it freed from any equities existing between the antecedent parties.  But our statute (Code of 1857, p. 355, art. 2,) allows the drawer, as against the indorser, the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and sets-off prior to notice of the assignment.  This innovation applies only to domestic negotiable paper, and not to paper made payable beyond the limits of this state.  In the latter case the law of the place where performance is to be made applies.

2. SAME—INDORSEMENTS—PRESUMPTIONS.—The holder of negotiable paper indorsed to him is presumed to have a *bona fide* title to, and to have paid value for it, and the burden of showing to the contrary is upon him who sets up defenses against it. In such case if the note be payable in Louisiana, the laws of that state must govern the recovery on it, and defenses against it.

3. SAME—DEFENSES.—The defendant to a bill of foreclosure will not be allowed to set up by cross-bill an allegation that the notes which the mortgage was given to secure were improperly made payable to one of two co-partners, and that the payee has otherwise misappropriated assets of the firm to his own use, to such a degree that he is debtor to his late partner. In such case he should have made the absent partner a party, put himself in the condition of a stakeholder, and compelled the parties in interest to litigate for the amount of the notes.

4. PRACTICE—EQUITY.—Courts of equity will not aid debtors in that sort of litigation which tends only to delay and to multiply suits.

5. EQUITY—SET-OFF—ASSIGNMENT—PARTIES.—Where the payee of a foreign bill of exchange or promissory note assigns it as collateral security to one of his creditors, the defendant to a suit on it by the assignees cannot plead a set-off against the original payee, without averring an excess in the amount of the paper over the amount which it was intended to secure, and making all the parties in interest parties to the suit.

APPEAL from the chancery court of Harrison county. HENDERSON, Chancellor.

*Champlin & Henderson,* for appellants.

The complainants received these two notes as collateral security for an antecedent debt of Waddy Thompson alone, and they took subject to all the equities existing between Thompson and his co-partner, Morris, and their creditors. No money was parted with at the time; no security given up or satisfied; no credit given Thompson in consideration of said notes. The credit had been given Thompson before in his individual responsibility. That they acquired no title in equity, we respectfully refer the court to the following decisions: Coddington v. Bay, 5 N. Y. Ch. 54, 20, 637, and the cases there referred to; Brooks v. Whitman, 7 S. & M. 511; Ainsworth v. Ainsworth, 24 Miss. 145.

The principle laid down by all the decisions is, that one who receives negotiable paper as collateral security, takes it subject to all prior equities, as much so as if the paper was past due. This is the principle, where the law merchant is in force, unaltered by statute. The

court is referred to the cases of Pope v. Pope, 40 Miss. 517; Perkins et al. v. Swank et al. 43 ib. 349. In this latter case the court said: " To constitute an innocent purchaser, some new present consideration must pass, which may be money, property, or the satisfaction of an existing security."

No such new consideration passed in the case according to the allegations of the cross-bill, and the demurrer admits the truth of these allegations.

The taking of the notes and mortgages in this case in the name of Waddy Thompson, was in law a fraud upon the rights of Morris, the other partner, and their creditors.

It is a good defense in an action at law, that the plaintiff is not the legal owner of the notes sued on, and this may be shown under the general issue. 5 S. & M. 379; 10 ib. 585; 11 ib. 452; 13 ib. 43; Luke v. Hastings, 24 Miss. 490. If, in a court of law, the plaintiff must have the legal title to the note sued on, it is submitted that in a court of equity the complainants must have the equitable title or they cannot recover. It may be said, however, that, admitting the facts to be as stated and the law correctly expounded, yet the defendant (Harrison) cannot make this defense. To this we answer, that it is the duty of every man who is sued at law on his promissory note, to see that the plaintiff has the legal title, as he might be made liable to pay it to him who had the legal title. More especially so in a case in equity, where he has been notified not to pay the amount to the party suing. Good faith to William B. Morris and the creditors of Waddy Thompson & Co., in this case, required him to defend this case, as well as his own interest. If he paid this money to the complainants, he might be made liable to pay it again, as he had been notified not to pay it to the complainants. No one but the equitable owner of the mortgage could enter the mortgage satisfied; and, in order

to protect his own interest, he was obliged to defend this suit and make this defense. A court of equity will always see that he who has the superior equity is protected. The court will see that Waddy Thompson has been made a party to both the original and cross-bill. He has not answered or demurred, and a *pro confesso* could and ought to have been taken against him by both parties. It sufficiently appears by the cross-bill, that William B. Morris is a proper party to this bill. The defendants could not make him a party. They could only file their cross-bill against the complainants and their joint defendants. This they have done. But it is a rule of chancery practice that whenever, in this stage of the proceedings, there are other proper parties who ought to be made either complainants or defendants, the court will stay the proceedings and order them to be made parties. Story Eq. Pl. 135, 136, 137. It will be seen by this cross-bill that William B. Morris is directly interested, and ought to be made a party to this suit; and that no decree can be made, without his being a party, either to bind him or to protect the defendant (Harrison). 2 Bibb, 184; 1 Johns. Ch. 349; 1 McCord Ch. 301; 3 Johns. Ch. 459; 3 Ark. 364. Again, this cross-bill is filed to obtain a discovery from the complainants whether their claims against Waddy Thompson have not been satisfied, either by the judgment against W. J. Porter & Co., or out of the other collaterals received by them. And the defendants are entitled to this discovery, and a demurrer will not lie to the bill. Story Eq. Pl. 628.

Thus we insist that both as to the merits of this case and to the pleadings as they stand, the demurrer ought to have been overruled. And we respectfully submit that the decree sustaining the demurrer ought to be reversed, and the defendants to the cross-bill be required to answer the same; and that they be compelled to make William B. Morris a party to the bill.

*Geo. L. Potter,* on same side.

1. The cross-bill avers, and the demurrer admits, that Pike Brothers & Co. took the mortgage notes of Harrison, which were assets of the late firm of Waddy Thompson & Co., and were transferred to Pike Brothers & Co. by Thompson, as collateral security for an antecedent debt due from him to Pike Brothers & Co., and that the latter have paid no consideration for said notes, and acquired no title, legal or equitable, to said notes, etc. This admission is conclusive against the demurrer, for Harrison has a right to discovery as to these particulars.

2. Waddy Thompson & Co. owe Harrison $1,650, for services rendered. These notes were given in settlement of an old debt due by him to that firm, and were, in fact, part of its assets. They are such assets now, if Pike Brothers & Co. are not entitled to hold them; and if in equity, now a part of the assets of Waddy Thompson & Co., then Harrison is entitled to offset his demand against his mortgage notes, that is, to claim the $1,650 as so much paid thereon.

Now, suppose that Pike Brothers & Co. took the notes of Harrison, under such circumstances that they would be entitled to collect them toward payment of the debt due to them from Thompson; we say the cross-bill suggests a state of case in which they can make no such claim, that is to say, the cross-bill shows that Pike Brothers & Co. received these notes as collaterals to secure payment of a draft for $10,000, drawn by Thompson on Porter & Co., and accepted by them. Pike Brothers & Co. have recovered a judgment in New York, against Porter & Co., on this draft, and one purpose of the cross-bill is to compel Pike Brothers & Co. to discover whether they have collected this judgment, that is, have collected the very debt to secure which the notes were transferred as collateral security. If that principal debt is paid to them, then Pike Brothers & Co. have no

interest in the notes; and if they can foreclose the mortgage at all, cannot resist the offset claimed by him.

The same remarks apply to the note of Perry Fuller, for $10,000, which was also delivered by Thompson as collateral security for his protested draft on Porter & Co. One object of the cross-bill is to compel Pike Brothers & Co. to discover whether they have collected the Fuller note.

3. Morris, the former partner of Thompson, claims these notes of Harrison, and consequently the mortgages given to secure them, as assets of the late firm of Waddy Thompson & Co., which firm is still indebted to third parties in over $5,000, and is indebted to Morris over $700, and Thompson owes the firm over $11,000. Morris has notified Pike Brothers & Co. that these notes are assets of his said late firm, and has notified Harrison not to pay them to Pike Brothers & Co. These notices were given long before this foreclosure suit was filed, and Pike Brothers & Co. thus notified beforehand, should have made Morris a party to their suit. Harrison has a right to a discovery as to these facts, and if his charges are true, Morris must be made a party. If the allegations of this cross-bill are true, it is plain that Pike Brothers & Co. cannot enforce this mortgage, and Harrison has, of course, the right to compel them to answer and discover touching all the matters of the cross-bill.

It is vain for them to pretend that, having taken these notes as collaterals to a protested draft, they are protected by commercial law, even though they took without notice.

4. The special points of the demurrer are frivolous. Harrison could not make Morris a party to the cross-bill, as he was not a party to the original bill, and if he could, it was error to dismiss the cross-bill for such a cause. Leave should have been given to make him a

party, if he could properly have been made defendant to such a cross-bill.

It is not true that Morris is not shown to object to the misuse of these notes by Thompson. On the contrary, his claim and his notice to the parties is expressly stated. Harrison does show that he is prejudiced by the transaction, both in the matter of his offset, and also by the fact that, being notified by Morris not to pay, he cannot safely pay Pike Brothers & Co., until the matter of controversy between them and Morris is settled. Since the mortgage was given expressly to secure these notes it is idle to pretend that Harrison is estopped to show for what debt the notes were given.

*Nugent & Yerger,* for appellees.

The notes executed by Harrison are drawn in Mississippi, but are made payable in the state of Louisiana, and are necessarily to be governed by the laws of that state. Story's Conflict Laws, § 280; Andrews v. Pond, 13 Pet. (U. S.), 65; Thazer v. Ellott, 16 N. H. 164; Fellows v. Harris, 12 S. & M. 462; Frazier v. Warfield, 9 ib. 220; Emanuel v. White, 34 Miss. 56; Bank of Kentucky v. Coffman, 41 ib. 212. It is well settled in Louisiana that the holder of a promissory note in good faith succeeds to all the rights of the indorser under whom he claims; that one who takes in good faith and without notice a negotiable instrument as security for a pre-existing debt, is entitled to recover upon it from the maker equally with one who paid value upon receiving it, and that a bank, taking paper as collateral security for money loaned, becomes the holder in good faith for a valuable consideration. Louisiana State Bank v. Gaiennie, 21 La. Ann. 555; Succession of Dalhonde, How. 3; Citizens' Bank v. Payne, 18 La. Ann. 222; Cook v. Larken, 19 ib. 507; Outhurle v. Parker, 13 Mich. 533; Cobb v. Doyle, 7 R. I. 550; Stotts v. Byart, 17 Iowa, 303; Bridgeport City Bank v. Welch, 29 Conn. 475.

II. There is another view to be taken of the transaction which will harmonize with those already advanced. Thompson owed the appellees the amount of Taylor & Co.'s acceptance, his draft, protested for non-payment, and being called upon for a settlement, indorsed and delivered to them the Harrison notes, and assigned the mortgage as collateral to the debt, doubtless to secure exemption from suit. The first of the mortgage notes matured July 3, 1869, and the draft of Thompson on Porter & Co., of New York, was dated April 5, 1869, and payable ten days after sight. So that the mortgage notes were indorsed and delivered to the appellees prior to their maturity. The contract was one, therefore, of bailment, and the appellees, as pledgees, pawnees or bailees, have the right to recover upon the notes by suit and receive the money due thereon. In fact they are bound to collect them and apply the proceeds to the payment of their debt against Thompson. They acquired a special property in the notes, even by the common law, and are entitled to exclusive possession during the time and for the object for which they were pledged. And, in this point of view, it make no difference whether the debt or engagement for which they were given as security is that of the pledgor or some other person, or whether they were given as a security for a future debt or engagement for a past debt. In fact the law seems to be well settled that the party who has lawful possession of negotiable instruments, although not the owner, has the power of pledging them as well as of selling them, so as to bind the rights of the owner. Much more strongly would the rule apply when the party pledging the paper has the complete legal title in them, with the absolute ownership, even in a court of chancery, of an undivided half thereof, and the supreme control over them as liquidator of his firm. Story on Bailments, §§ 295, 300, 303, 322; White v. Phelps, 14 Minn. 27; Bank v. Gaiennie, 21 La. Ann. 555; Donohoe v. Gamble, 38

Cal. 340; Comstock v. Smith, 10 Shep. 202; Foote v. Brown, 2 McLean, 369.

It cannot affect the question that the appellees had sundry other collaterals for the payment of their debt. The only defense the appellants could possibly have to a payment of the mortgage notes and mortgage is, that the orignal debt, for which they were indorsed and delivered as collateral, has been paid. Union Bank v. Laird, 2 Wheat. 390; Elder v. Rouse, 15 Wend. 218; Bank of Rutland v. Woodruff, 34 Vt. (5 Shaw) 89.

SIMRALL, J.:

Pike Brothers & Co. brought their bill in chancery to foreclose a mortgage made by R. F. Harrison and wife, to secure two promissory notes, made by Harrison, payable to Waddy Thompson, and by him indorsed to the complainants, one for $2,632.24, at one year after date, the other for $3,062.28, at two years after date.

The answer and cross-bill of Harrison alleges that the notes and mortgage to Thompson were executed in liquidation of a debt, due by Harrison to Waddy Thompson & Co., a commercial firm composed of Waddy Thompson and William B. Morris. This copartnership was formed in 1865, and dissolved, by consent, 10th of June, 1868. Thompson and Morris had two places of business, one in New Orleans, under the firm name above stated, the other at Shreveport, La., under the style of Thompson, Morris & Co. That Thompson was charged with the liquidation of the business until the 1st of May, A. D. 1869, during which time he collected of the assets $31,752.98, and paid to the creditors $20,625.70, thereby leaving himself debtor to the firm $11,124. Of firm debts he left unpaid over $5,000.

In June, 1869, Thompson becoming involved, turned over the business of the two firms to his late partner, Morris, for settlement. Morris has collected over $6,000

of debts; has paid out to creditors over $7,000, leaving a balance in his favor of over $600.

In April, 1869, Thompson negotiated and sold to the complainants, Pike Brothers & Co., two drafts for $10,000 each, drawn by himself on W. J. Porter & Co., New York, one of which was not paid. That, in order to protect the complainants, on account of the protested bill, Thompson transferred to them the two notes aforesaid of the defendant, Harrison, and a note of Caughn & Fleming for $2,194, which was of the assets of the firm of Waddy Thompson & Co. These notes were held as collateral security for Thompson's indebtedness to the complainants. There was also, on the same consideration, transferred to them the note of Perry Fuller, for $10,000. Morris, in May, 1869, notified the complainants, in writing, that the notes of defendant Harrison belonged to the co-partnership of Waddy Thompson & Co., and were not the individual property of Thompson. Suit is pending in New York by the complainants against W. J. Porter & Co. on the protested draft of Thompson. Morris, in 1869, gave notice to defendant not to pay his notes to Pike Brothers & Co. The defendant asserts an indebtedness of Waddy Thompson & Co. to him of $1,650, for work and labor, which should be an offset *pro tanto* against his notes. The case has been brought here from the decision of the chancellor sustaining the complainants' demurrer to the cross-bill.

The notes are payable to the defendant's own order, and by him indorsed and delivered to Thompson, who indorsed and delivered them to the plaintiffs. They are payable in New Orleans.

Pike Brothers & Co. and Waddy Thompson are residents of Louisiana, and were doing business at New Orleans.

In order to determine the right of the defendant to set up the defenses and matters contained in his answer and cross-bill, it becomes necessary to define

the relations of the several parties in respect to the mortgage notes.

By the law merchant the indorser of a bill of exchange or promissory note, who has paid a consideration, takes the paper freed from the equities existing between the antecedent parties. But our statute, Code of 1857, p. 255, art. 2, allows as against the indorsee, the " benefit of all want of lawful consideration, failure of consideration, payments, discounts, sets-off, made or had against the paper previous to notice of assignment." This radical innovation on commercial law has been uniformly held to apply to negotiable paper purely domestic ; as, where the note is made payable here, or the bill of exchange is inland, or, more properly, "domestic." If the bill is drawn upon a party in another state or in a foreign country, or the note is made payable there, neither is, as a general rule, affected by our statute, but is governed by the law of the place where performance is to be made. Such is the character of a bill of exchange or promissory note drawn or made here, but payable in New Orleans or New York. Miller v. Mayfield, 37 Miss. 688 ; Emanuel v. White, 35 Miss. 56 ; Bank of Kentucky v. Coffman, 41 Miss. 212 ; Fellows v. Harris, 12 S. & M. 462 ; Bank of Louisiana v. Williams et ux. 46 Miss. 625. The effect is to select the laws of the other state or country, and "locate" the contract there, subject to them. Case last cited, and Dalton v. Murphy, 30 Miss. 75.

The holder of negotiable paper, indorsed to him, is presumed to have a *bona fide* title, and to have parted with value for it ; and it devolves upon the maker of the note who sets up defenses and equities between himself and the payee, to lay a foundation for the right claimed, by showing that the indorsee parted with no valuable consideration, or that he took the paper when discredited after it was due, or some other facts which throw suspicion upon his title, and which would put

him upon his guard, and enjoin inquiry. Such is the law merchant. Winstead v. Davis, 40 Miss. 785.

The defendant, by making his note payable to his own order at New Orleans, and indorsing and delivering it to Thompson, domiciled the transaction in Louisiana, and submitted it to the laws of that state, and engaged that if the paper in due course of business was negotiated in that state by Thompson, the rights of his indorser should be measured by that law.

The averment of the cross-bill is that the notes were passed to the complainant before their maturity. That constitutes the plaintiffs presumptively *bona fide* holders, unless the allegation that they took them as collateral security from Thompson, deprives the plaintiffs' title of the protection which attaches to one who has parted with value. Was the transfer of the notes to the complainants, as collateral security for Thompson's indebtedness, a negotiation for value, so as to constitute them *bona fide* holders, and thereby shield them from any equties which might exist between Thompson and the defendant. That question must be referred to the law of Louisiana, where the transaction between Thompson and the complainants took place.

In the succession of Dolhonde, 21 La. Ann. 4, it was pressed upon the court, that although the commercial law protects the *bona fide* holder of the note, who acquires it before maturity, yet, if the note has been received as collateral security for a pre-existing debt, the rule does not apply. But the court adopt the doctrine of the supreme court of the United States in Swift v. Tyson, 16 Peters, 20, where it was distinctly laid down that a pre-existing debt does constitute a valuable consideration. In President and Directors of Louisiana State Bank v. Gaiennie, 21 La. Ann. 556, it is again affirmed that a transfer " as collateral security, before maturity, constitutes the indorsee holder " in good faith for value." These decisions were

made in 1869, and establish that the complainants are unaffected by any equities or defenses that may have existed between prior parties to the paper. It cuts off the claim of the defendant to be credited as against the complainants with the offset of $1,650.

The other subjects of the answer and cross-bill are the misbehavior of Thompson in closing the account of Waddy Thompson & Co. against the defendants, with notes payable to himself personally, and that he has otherwise appropriated the assets of the firm to his own use to such degree that he is the debtor to his late partner, Morris, to a large amount.

What benefit can the defendant derive from an investigation of these matters? How can they avail in this suit? What does it matter to him how the partnership account stands between Thompson and Morris? If these things were proper to be adjudicated in this suit, then he ought to have made Morris a party to his cross-bill, or ought to have put the complainants under a rule to do so. Morris, as shown by the cross bill, was aware that the complainants held these notes; if he desired to intervene in the suit in order to protect his interests, by having any surplus there might be after liquidating the debt of Thompson to complainants, paid over to himself, he would have been permitted to do so. It is reasonable to infer that he preferred relying upon his notice to the complainants, rather than to interfere in this suit, and hereafter to assert his claims against the complainants, in respect to any fund they may realize out of it in a separate suit.

The cross-bill does not aver that Morris repudiated the settlement made by Thompson with the defendant; but on the contrary, that he recognized that settlement as valid, the notes and mortgage as representing the indebtedness; claiming that in reality the money due upon them was assets of the co-partnership. Such was the purport of the written notice given to the complainants.

But if Harrison, the defendant, could be permitted to interpose against the complainants whatever right Morris might have, what is its nature and extent? Morris might claim that the proceeds of these notes ought to go first to the creditors of the partnership, and the surplus to make good the balance due from Thompson to him on the partnership account. If the complainants were out of the way, that would be the equitable appropriation of the fund. But can the defendant set up that equity in favor of Morris to defeat the complainants' legal title to the note? If Morris could not himself successfully plead it, *a fortiori*, the defendant cannot. If Morris were setting it up in this suit, it would be answered by the case of Bank of Manchester v. Lewis, 13 S. & M. 230–1. It was claimed that there had been a misappropriation of the notes of Wilkinson, the agreement being that the notes should be applied to take up the liabilities of C. L. & D., with the knowledge of Cusack, who indorsed them to the bank. The proceeds were actually applied to the debts of C. & D. In the view of the court, although such agreement may have existed, yet if the bank had no notice of it, it was not bound by it. The legal title to the notes was in the bank. The complainant set up a prior equity which was unknown to the bank, and, therefore, should not prevail against its legal title. The asserter of the equity is not a party to the paper as maker, payee, or indorsee. The staute only lets in the defenses as against a holder of the note. Morris is not a party to the notes. He has an equity prior to the indorsement of the paper to the complainants, that the proceeds shall go to the partnership account, and not to the personal benefit of Thompson. But that equity being unknown to the complainants before they received the note, cannot prevail against their legal title. Such is undoubtedly the rule under the law merchant of

Louisiana, and such too is declared to be doctrine here in the case cited.

But there is another view of the case made in the cross-bill. As we have shown, the complainants became the *bona fide* holders and owners of the notes in due course of business. The entire equity, except the offset set up, is for the benefit of Morris, and yet the defendant omits to make Morris a party. Reduce the cross-bill to the simplest analysis and it is this: Morris is entitled to the money due upon the notes, because the notes are partnership assets which Thompson attempted to misapply, and upon the account between the partners, Thompson is indebted the full amount of the notes to Morris; besides, the joint-creditors have not been fully paid off. It is very manifest that, as to all, the only parties concerned are Morris and Thompson, and yet the defendant interposes to litigate these equities in this suit without making Morris a party.

The answer and cross-bill proceed throughout on the postulate, that the defendant owes the debt in the mortgage mentioned, has no discount, defense or offset to any part of it (except $1,650 for work and labor); but the notes are held by the complainants as collateral security for Thompson's debt, which defendant does not think gives them a good title, but that really the money ought to go for the reasons stated to Morris.

If in good faith the defendant admits his indebtedness, except his claim of offsett, but was in doubt to which of the two claimants he ought to pay it, he should have made his answer a bill of interpleader, put himself in the attitude of a stakeholder, indifferent between the parties, deposited the money in court with his bill, and prayed that the complainants and Morris, or Thompson and Morris, should litigate between themselves, so that the court might adjudge which was entitled to the fund. Instead of that, the defendant volunteers to become the

exponent and champion of the rights of Morris, hoping to defeat the plaintiffs by showing a better claim in this stranger to the record.   A court of equity is not disposed to aid a debtor in that sort of litigation, which only tends to delay and postpone and multiply suits.

There is only one view that can be taken of the offset of $1,650 which could authorize its consideration in this suit.   This claim might have been set up against the debt of Waddy Thompson & Co. against the defendant.   But when the defendant gave his negotiable notes to Thompson to close up that indebtedness, he must be presumed as assenting to a negotiation of the notes, which would defeat the offset, and also as consenting to separate his offset altogether from the settlement resulting in the notes and mortgage, leaving himself open to assert it as an ordinary debt against W. Thompson & Co.   But if the defendant elects now, and in this suit, to press his offsett, he ought to have prepared the way for its consideration and allowance by proper allegations; chief of which would be, that unless now allowed to him, it would be lost, because of the insolvency of Waddy Thompson & Co.; and then only would it avail, unless it should turn out that there should be a surplus from the notes and mortgage after satisfying to the complainants Thompson's indebtedness. to them. But the defendant cannot litigate the offsett for any purpose, unless Morris is a party.   The cross-bill contains another defect; it does not aver that if the mortgage debt were collected by the complainants, and there should be an excess after the satisfaction of Thompson's debt, that Morris or Thompson and Morris would be in danger of loss on account of the insolvency of the complainants.

If the defendant should go forward and pay the mortgage debt in full to the complainants, they would have the right to apply the money to pay Thompson's debt to themselves, and would hold the balance for the use

of whoever might be entitled to it. Through them Harris would obtain all that he could receive in this suit.

In view of the whole case, we think the demurrer to the cross-bill ought to be sustained.

If the defendants can show by proof that the complainants have been paid the debt for which the notes were transferred as collaterals (which may be done under the answer), then they would prove that the complainants have no interest in the notes and subject-matter of the suit, and would defeat a recovery.

*Decree is affirmed.*