LIENKAUF BANKING COMPANY v. JAY J. HANEY ET AL.

[46 South. 626.]

1. PROMISSORY NOTES. *Law governing. Place of payment.*

A promissory note executed in this state, negotiable and payable in another state, is governed by the law of the state where payable, although given for, and secured by the reservation of title to, property in this state.

2. SALES. *Reservation of title. Suits to enforce. Decree. Property not to be had.*

In an equity suit to collect a note reserving title to personal property that has been resold by the maker, a proper decree in complainant's favor is one for the entire debt against the maker condemning the property, if to be had, to sale, and a decree against each of the subsequent purchasers for such parts of the entire debt as equals the value of the property converted by them respectively to their own use and which can not be had for sale—the decrees against the subsequent purchasers to be enforced only if the one against the maker can not be collected.

FROM the chancery court of Lamar county.

HON. THADDEUS A. WOOD, Chancellor.

The banking company, appellant, was complainant in the court below: Haney and others, appellees, were defendants there. From a decree in defendant's favor the complainant appealed to the supreme court.

The suit was predicated of two certain promissory notes, set out in the opinion of the court, executed by Jay J. Haney and J. R. Haney doing business under the firm name of J. J. Haney Company. Metzger Bros., the nonresident payees in and indorsers of the notes, are made defendants. The bill was afterwards amended so as to include as parties defendant the J. J. Haney Company, J. T. Arnold, J. H. Thompson, and Hawkins & Co., the amended bill charging that said Jay J. and J. R. Haney had transferred their interest to the J. J. Haney Company, who in turn transferred to Arnold, who sold to

Thompson, who sold to Hawkins & Co.; and the bill avers that each of these defendants took the property subject to the lien of complainants, and that each, by use of the property and disregard of complainants' rights, had converted it to his own use and had so commingled it with other property of like kind as to render its identification difficult, if not impossible, and much of it had been destroyed by defendants, and thereby they had become liable to complainant for the amount of the notes. The bill prayed for a decree for the amount of the notes, interest, and attorney's fee, and for a condemnation of certain rails, etc., sold to the Haneys by Metzger Bros., and for the purchase price of which said notes were given. The Haneys answered, setting up as a defense a delay in delivery which caused them a loss, and that the rails sold them did not come up to the representation made, but were of a poorer grade, and that they had advised Metzger Bros. that the notes would not be paid, and deny that complainant is the owner of the notes in good faith. The other defendants answered separately, each practically adopting Haney's answer. The court below held that the case was controlled by the law of Mississippi, and that the Lienkauf Banking Company, the purchaser of the notes, became the owner thereof subject to such equities as might be set up and proven by defendants, and dismissed complainant's bill. The facts are further stated in the opinion of the court.

*Ford, White & Ford* and *Green & Green,* for appellant.

The court will observe that the notes or instruments of writing upon which this suit was brought, were both made payable at the Lienkauf Banking Company's office in Mobile, Alabama.

This being true, the right of the parties to this suit is necessarily governed by the laws of the state of Alabama. SIMRALL, J., in *Harrison v. Pike,* 48 Miss. 56, announced the rule on this subject as follows: "By the law merchant the indorser of a bill of exchange or promisory note, who had paid a consideration, takes the paper freed from the equities existing between the an-

tecedent parties. But our statute, Code 1857, p. 255, Art. 2, allows as against the indorsee the benefit of all want of lawful consideration, failure of consideration, payments, discounts, set off made or had previous to notice of assignment. This radical innovation on commercial law has been uniformly held to apply to negotiable paper purely domestic; as where the note is made payable here, or where the bill of exchange is inland, or more properly domestic. If the bill is drawn upon a party in another state, or in a foreign country, or the note is made payable there, neither is, as a general rule affected by our statute, but is governed by the law of the place where performance is to be made." To the same effect see *Miller v. Mansfield,* 37 Miss. 688; *Emanuel v. White,* 34 Miss. 56; *Bank of Kentucky v. Coffin,* 41 Miss. 212; *Fillons v. Harris,* 12 Smed. & M. 462; *Bank of Louisiana v. Williams,* 46 Miss. 625; *Dalton v. Murphy,* 30 Miss. 75; *Kendrick v. Kyle,* 78 Miss. 278, 28 South. 951; *Hart v. Foundry Co.,* 72 Miss. 809, 17 South. 769.

The fact that the obligation may have been written in Mississippi, or that it was secured by a lien, or mortgage upon property in this state does not at all alter the rule. Some of the cases above cited were based upon notes secured by mortgages upon lands in Mississippi.

The rule announced in *Shannon v. Building & Loan Association,* 78 Miss. 955, 30 South. 51, and other building and loan cases, in no way modify the general rule. The court in all the building and loan cases found that these companies, although masquerading under foreign charters, were in truth and in fact Mississippi corporations, in that they had localized themselves through the instrumentality of local boards of directors and through these local boards, actually collected, as had all the time been contemplated, between all parties, the notes, or obligations, due the building and loan company. There is nothing of this sort in the case at bar, and the case, we submit, is subject to the general rule.

Under the laws of Alabama, an indorsee of a promissory note,

or bill of exchange, takes the paper freed from all equities between the parties. *Johnson v. Hanover National Bank*, 6 South. 909; *Wildsmith v. Tracey*, 80 Ala. 258; *Brown v. First National Bank*, 15 South. 435; *Holmes v. Bank of Fort Gaines*, 24 South. 959; *Fairley v. Bank*, 24 South. 428; *Winter v. Pool*, 16 South. 543; *Scott v. Tane*, 22 South. 447; *Orr v. Spankman*, 23 South. 829; *King v. Peoples Bank*, 28 South. 658.

The Lienkauf Banking Company were the owners of the notes sued upon and produced the originals and had them attached to a deposition. The bank purchased the two notes on November 24th, 1902, from Metzger Brothers, paying them therefor $2,113.95.

The chancellor held that the contract for the sale of the iron having been made in Mississippi, and the title retained as security for the debt, the Lienkauf Banking Company were charged with notice that it was a Mississippi contract and that the notes given in settlement were likewise Mississippi obligations. This court has more than once, as cited in *Harrison v. Pike, supra,* declared that the fact that notes are made payable in a foreign state to carry out a contract made in Mississippi, does not alter the rule.

*Sullivan & Tally* and *Alexander & Alexander,* for appellees.

The contract in this case is one and indivisible. It is not a simple promissory note for a sum certain payable in Mobile. The various stipulations in the contract cannot be performed in Mobile. The contract is not that the payee or his endorsee or assignee shall have the right to exact payment of the debt, but on the maturity of the first note they have the right and privilege therein designated.

The contract was made and concluded in Mississippi, the property, the subject matter of the contract, was in Mississippi; delivery thereof was to be in Mississippi and every part of the contract, except that calling for payment of the price, was

to be performed in this state.    The purchasers of this contract do not stand in the attitude of purchasers of ordinary commercial paper negotiable under the law merchant.    On its face the contract gave notice that the money was to be paid as the purchase of certain iron rails and showed the several stipulations in regard to performance.    The title to the rails was not stipulated to remain in Metzger Brothers or the holders of the notes, but in Metzger Brothers or their assigns.    They had a perfect right to assign their interest or lien to any one they saw proper. The word assigns is hardly appropriate to indicate the successor under the law merchant to the title of commercial paper. We therefore submit that these contracts were not negotiable.

In the next place the ground of equity jurisdiction was to enforce the lien on the property, viz.: the iron rails and fastenings.    It is not shown that any of these were in existence under the jurisdiction of the court when the decree was rendered.

Hawkins & Company, the present owners of the mill and tramway, by purchasing the property from the vendees of Haney did not by reason of the purchase, come under any further obligation to Metzger Brothers or to Lienkauf Banking Company than to account for the actual value of the old rails and fastenings converted by them.    It is true they agreed to indemnify their immediate vendors.    Defendant Thompson states the agreement with Hawkins & Company to be that the Haneys were asserting their claim for damages against the claim for any unpaid purchase money for said rails and fastenings, but with the further understanding that if said claim was not sustained Hawkins & Company would take all the responsibility and would relieve Thompson from the same.    However, the agreement has been expressed by the various defendants, it is plain that the contract was one for indemnity merely if Haney & Company should ever have to pay the debt.    In other words, if they are solvent and judgment should be recovered, Hawkins & Company would reimburse them.    This was a con-

tract, however, for indemnity merely between Thompson, Arnold and Hawkins, and did not enure to the Lienkauf Banking Company and has not been sued on by it.

The Lienkauf Banking Company has not shown that it was a *bona fide* purchaser without notice. The bill alleged that it bought for value without notice and the answers denied this. The burden was therefore on complainant. A complete defense by way of failure of defense or recoupment having been shown, it devolved on complainant to show that when it took the paper it had no notice of such defense. These facts were that Metzger Brothers were solvent customers of the bank and that these notes were merely placed to their credit. It is not shown that this particular money was ever drawn out or that the account was ever reduced at any time before maturity of the paper, or even before suit brought, below the amount of the note. It is not shown that the bank was ever in any way prejudiced or ever took any risk or ever was really out any money at all. It seems to be a case where Metzger Brothers are merely using the name of the bank to collect their debt; the bank having no sort of interest and taking no risk in the matter.

It is unnecessary to discuss at length the facts relied on to support the defense of failure of consideration. This case is covered by that of *Stillwell v. Biloxi Canning Co.,* 78 Miss. 779, 29 South. 513.

MAYES, J., delivered the opinion of the court.

On the 6th of October, 1902, J. J. Haney executed the following note:

"Hattiesburg, Miss., Oct. 6th, 1902.  $1,025.48.  Three months after date I promise to pay to the order of Metzger Bros., of Mobile, Alabama, the sum of one thousand and twenty-five and forty-eight one-hundredths dollars. Interest from date at the rate of eight per cent. per annum. Value received. Negotiable and payable at the Lienkauf Banking Company, of Mo-

bile, Alabama. In case this note is not paid at maturity and the same is collected by an attorney, I agree to pay all costs of collection and including ten per cent. attorney's fees. This note is given as part payment of the purchase price of one hundred and seventy tons T rails and connections and is one of a series of two notes. It is agreed and understood that the title to all of said rails and fastenings is not to vest in us, but to remain in said Metzger Bros., or their assigns, until all the purchase money notes which we have agreed to pay therefor are fully paid. Metzger Bros., or their assigns, distinctly reserve and retain the title to said rails and fastenings; and the said Metzger Bros., or their assigns, shall have the privilege of taking up and removing all said rails and fastenings at their option, without notice to purchaser should any part of said purchase money be not paid when due. It is also understood that said material shall be regarded as personalty until the purchase price therefor shall be paid. J. J. Haney."

The above is one of two notes; both being for the same amount, one payable three months after date, and the other six months after date. On the face of these notes they are negotiable and payable at the Lienkauf Banking Company, of Mobile, Ala. Before the maturity of these notes and for a valuable consideration, without notice, the Lienkauf Banking Company became the holder of the notes by indorsement from Metzger Bros. These notes were not paid at maturity, and suit was instituted by the Lienkauf Banking Company against Jay J. Haney and others for the amount thereof. The defense sought to be made is a failure of consideration.

The question in the case is whether or not these notes are to be controlled by the law of Alabama or the law of Mississippi. If controlled by the law of Alabama, the defenses offered cannot be made under the law merchant of that state. If controlled by the law of Mississippi, the defense is a valid defense. In view of the fact that these notes provide on their face that

they shall be negotiable and payable at the Lienkauf Banking
Company, of Mobile, Ala., we hardly think an argument as to
the place where these contracts are to be performed. and by
what law they should therefore be controlled is necessary. Un-
der the repeated decisions of our state, beginning with the case
of *Fellows v. Harris,* 12 Smed. & M. 462, and ending with the
case of *Hart v. Foundry Co.,* 72 Miss. 809, 17 South. 769, it
has been held that, where a note is made negotiable and payable
in another state, it must be governed by the law of that state.
This has been the unbroken authority of our state on this sub-
ject.   *Harrison v. Pike,* 48 Miss. 46; *Fellows v. Harris,* 12
Smed. & M. 462; *Miller v. Mayfield,* 37 Miss. 688; *Emanuel
v. White,* 34 Miss. 56, 69 Am. Dec. 385; *Coffman v. Bank,* 41
Miss. 212, 90 Am. Dec. 371; *Bank of La. v. Williams,* 46 Miss.
625, 12 Am. Rep. 319; *Dalton v. Murphy,* 30 Miss. 59; *Hart
v. Foundry Co.,* 72 Miss. 809, 17 South. 769.   This rule of the
law as to the negotiability of the notes is not to be changed be-
cause of the incident that the notes reserve title to the property
which forms the predicate of the debt.   The notes are for a sum
certain, negotiable and payable in Alabama, and are controlled
by the law of that state.   *Ensley Lumber Co. v. Lewis,* 121
Ala. 94, 25 South. 729.

While the case must be reversed, it is manifest that the ap-
pellant is not entitled to all the relief sought by the bill.   It
can establish no lien or claim on any rails, except such as were
sold.   The decree of the court below should be against the mak-
ers of the notes for the amount of same, with interest, and the
amount of the notes should be made out of them if they are not
solvent.   If, however, they are insolvent, then the complainant
or appellant is entitled to a decree against the other defendants
only for such quantity of iron bought by Jay J. Haney from
Metzger Bros. as may be shown that each converted to his use
after the purchase from Jay J. Haney and the J. J. Haney
Company.   If the testimony fails to show that the subsequent
owners of the road converted any of the rails sold by Metzger

Bros. to the use of the makers of the notes, then the complainant is not entitled in any view of the case to a judgment against the subsequent owner:

*Reversed and remanded.*