J. B. WOLFE ET AL. *v*. WILLIAM CRAWFORD, CLAIMANT.

1. COMMON CARRIER. *Bailment. Lien for freight and advances. Attachment by creditor of owner.*

   A creditor of the general owner of goods cannot, by attachment against the latter, take from a common carrier the goods shipped by the owner, while *in transitu* to the consignees, without first paying to the carrier the freight and his other legal charges.

2. SAME. *Case in judgment.*

   Where a charge is imposed by the bill of lading on cotton shipped upon a steamer, to be collected from the consignees, for reimbursement to the master of the steamer for money advanced to pay the levee taxes on the cotton and responsibility for goods delivered to the shipper, the common carrier acquires, by the delivery of the cotton to him, a qualified right or title which he can assert as claimant against a creditor of the owner, who attaches the cotton while *in transitu*.

ERROR to the Circuit Court of Warren County.

Hon. GEORGE F. BROWN, Judge.

Joseph B. Wolfe & Co. sued out an attachment against J. W. Bissell on the 15th day of February, 1875, at Vicksburg, returnable to the Circuit Court of Warren County, and on the same day had it levied on the cotton in controversy. Bissell pleaded in abatement of the attachment, and afterwards, by leave of court, withdrew his pleas, and the plaintiffs took judgment by default. On Feb. 17, 1875, William Crawford filed his affidavit claiming the cotton levied on, and gave the

claimant's bond. Issue was tendered and joined upon his claim. It appeared from the evidence on the trial that Lehman Abraham & Co., cotton factors and commission merchants, of New Orleans, advanced large sums of money to Bissell, who was a country merchant, under an agreement that the latter should ship cotton to them to be sold, and the proceeds retained and applied to the payment of the advances. For the purpose of fulfilling this obligation, Bissell advanced money and goods to one Bailey, under a similar arrangement, who agreed to ship cotton to Lehman Abraham & Co., on account of Bissell, to be sold, and the net proceeds to be retained by Lehman Abraham & Co., and applied to Bissell's debt with them, Bissell crediting Bailey with the same amount. Wolfe & Co. had seized under their writ against Bissell cotton which Bailey had shipped to Lehman Abraham & Co., for account of Bissell under the agreement, while the cotton was *in transitu*, at the port of Vicksburg, on the Mississippi River. The claimant, Crawford, was master of the steamer Delia, on which the cotton was shipped. He had paid the levy tax on the cotton, and made other outlays for the shipper, and claimed a lien therefor. The particulars of his claim are stated in the opinion of the court. The jury, as instructed, found for the claimant, and the plaintiffs in attachment bring up the case.

*Owen McGarr*, for the plaintiffs in error.

The title to the cotton was clearly in Bissell, and it was, therefore, subject to the attachment. Any lien which the carrier may have had was waived by his not demanding his freight and advances at the time the levy was made. He had parted with possession before the demand.

*Pittman & Pittman*, for the defendant in error.

It is well-established that an officer cannot take property out of the possession of a bailee who has a lien for freight and advances, without paying or tendering the amount due. *Truslow* v. *Putnam*, 1 Keyes (N. Y.), 568; *Brownell* v. *Carnley*, 3 Duer (N. Y.), 9; *Pomeroy* v. *Smith*, 17 Pick. 85; Freeman on Executions, § 120, p. 165, and cases there cited; Story on Bailments, § 353; Edwards on Bailments, 204; *Badlam* v. *Tucker*, 1 Pick. 389; *Scott* v. *Sholey*, 8 East, 467; *Metcalf* v.

*Scholey*, 2 Bos. & Pull. N. R. 461. In *Brownell* v. *Carnley*, the bailee recovered the goods from the sheriff in an action of replevin. In *Truslow* v. *Putnam*, a constable who had made such a seizure was held liable to trespass. In *Pomeroy* v. *Smith*, the pledgee was held entitled to recover of the officer the full value of the goods, and not merely the amount due from the pledgor. *Badlam* v. *Tucker* decides that a chattel pawned is not liable to an attachment in an action against the pawner, and whether the creditor may remove first the incumbrance and then attach the chattel, *quære*.

SIMRALL, C. J., delivered the opinion of the court.

Several questions, not free from difficulty, arise on the record. If, however, the result in the Circuit Court is right on one of several grounds, the judgment must be affirmed. ·

It is clearly established by the testimony that Crawford, the master of the steamer Delia, had advanced money on the cotton to the amount of several hundred dollars, by payment of the levee taxes on the cotton, and advances or responsibilities for goods delivered to Bailey, the shipper, amounting in the aggregate to about $1,600, including the freight; and that for reimbursement a charge was imposed on the cotton by the bill of lading, to be collected from the consignees.

The delivery of the property to the common carrier created in him a qualified right or title which he could successfully assert against a stranger who interfered with his possession, or did any injury to it. *Arnold* v. *Jefferson*, 1 Ld. Raym. 275. This right arises from his interest in conveying the goods, and a most rigid responsibility for loss or injury during the transit. Story on Bailments, § 585. And it is paramount to all others, except the true owner. A bailee who receives goods for any purpose, as a wharfinger, warehouseman, or common carrier, is placed towards the bailor very much in the relation of a tenant to his landlord: he cannot repudiate or dispute the title of his bailor in any action brought by the latter against him. *Gosling* v. *Birnie*, 7 Bing. 339 ; *Harman* v. *Anderson*, 2 Camp. 243. He may, however, protect himself by showing that the goods have been recovered from him by judicial proceedings. But the right of the general owner to be restored to

the possession is dependent on the payment or tender of the freight, and other charges on the goods to the carrier. For these he has a lien, which would be lost if he parted with the possession; and he cannot be compelled to make delivery until they are discharged. Story on Bailments, § 588; 2 Kent Com. 634. The general owner cannot dispossess the carrier of the goods without payment or tender of his legal demands upon them.

The precise question before us is, whether a creditor of the general owner (conceding Bissell to have been such) could take the goods from the common carrier while *in transitu* to the consignees, without first paying the freight and other legal charges to the carrier. The one hundred and five bales of cotton were shipped by Bailey, at Shell Mound Landing, on the Sunflower River, consigned to Lehman Abraham & Co., New Orleans, for account of J. W. Bissell. The bill of lading charged the cotton with the freight, $420, at $4 per bale, $315 paid by Crawford, the master of the Delia, for the levee tax on the cotton, and other outlays by Crawford for the shipper, amounting in all to about $1,600.

At common law, property pledged or pawned could not be sold under execution. The reason assigned is, not that the pledgor has no interest in it, but because of the insuperable obstacle that the pledgee is entitled to the possession. Really that is the essential thing in support of his right. But if the judgment creditor would first satisfy the claim of the pledgee by paying his demand, the right of the pledgor becomes absolute, and the property may then be taken in execution. *Legg* v. *Evans,* 6 M. & W. 36.

In some of the States the subject is regulated by statute; in others, special rules have been adopted by the courts exceptional to the general principle. Thus in New York, in *Truslow* v. *Putnam,* 1 Keyes (N. Y.), 568, seven sewing-machines had been seized under attachment against one Lester. The plaintiff, as his agent and factor, had a lien for his advances and commissions, and replevied the machines. The judge delivering the opinion said, he was inclined to think that " Lester had a leviable interest in the sewing-machines; " but, as " the plaintiff was in possession, having a valid lien thereon and special

property therein, they were not liable to be taken out of the plaintiff's possession." The constable (who served the attachment) was liable for removing the goods, and the plaintiff recovered. The inference is, that the sewing-machines might have been attached without disturbing the plaintiff's possession. In Pennsylvania, in *Baugh* v. *Kirkpatrick*, 54 Penn. St. 84, it is said the officer may sell pawned goods, though he cannot *seize* them. In Massachusetts, the statute provides two modes of attaching goods pledged or mortgaged : one is by summoning the pledgee or mortgagee as trustee of the debtor, and the other by tendering the amount for which the property is subject. In *Pomeroy* v. *Smith*, 17 Pick. 85, the attachment was held to be bad, because the statute was not followed.

In *Brownell* v. *Carnley*, 3 Duer (N. Y.), 9, 13 (a case between a commission merchant, who had made advances, and the general owner, for whose debt the goods were seized), in commenting on the modifications made by the New York statutes on the common law, the court stated the common-law rule to be that in these circumstances the commission merchant has an *absolute* right to retain possession of the property until the conditions of the pledge have been fulfilled ; and that, to warrant an interference, an express statute changing the common law must be shown. The statute allowed a sale of the interest of the pledgor under execution ; but, inasmuch as sales under attachments were not embraced, the court declined on a doubtful analogy to extend it to cases not within its terms.

In *Butler* v. *Lee*, *ante*, 476, we held that, after condition broken of a chattel mortgage, the goods could not be seized in the hands of the mortgagee for the debt of the mortgagor ; and that, if the officer made a levy while the property of the mortgagor, the mortgagee, being entitled to the possession, and having the superior equity, could recover the goods. Instead of the statutes of this State to any extent modifying the common law, § 1435 of the Code, so far as it affects this question, is declaratory of the common law, prescribing the mode in which the attachment shall be served on the various sorts of property mentioned therein, as follows : " In case of a levy on money, *goods* or *chattels* of the defendant, the officer shall take

the property into possession, and safely keep the same, to answer and abide the judgment." Under executions it has always been held in this State that an effectual valid levy on personal property could not be made unless the officer took the property into actual possession, or acquired such control and dominion over it as would be equivalent to it. The attachment law gives the same direction as to the service on that sort of property.

There is another section (§ 855 of the Code) which by its terms applies to *executions*, and sales under them, as do the provisions placed in connection with it. It authorizes a levy on the property of the defendant in execution, without taking the property into actual possession, when the debtor owns or is entitled to an undivided interest in any property not exclusively in his own possession. The sale shall vest in the purchaser all the interest of the defendant in the property. This section applies to joint ownerships and interests in property, such as joint tenants, or joint owners of personalty, and perhaps to the sale of the interest of a partner in the property of a firm. At common law, a levy on the interest of one of several joint owners of a chattel was made by a seizure of the thing, and the purchaser from the sheriff became joint owner of that interest with the others. *Beaumont* v. *Crane*, 14 Mass. 400. This section was designed to permit a levy and sale without dispossessing the joint owner who might be in possession, but to leave to the purchaser from the sheriff the same rights which the debtor had.

But a bailee, until the conditions of the bailment have been accomplished, has a property in the chattels, and a possession which is *exclusive*, both as to the general owner and strangers. His interest is not joint, in the sense that it may become separate by partition. His right and possession extend to the entire property; nor can the bailor, or any one claiming through him, interrupt and defeat his rights until a satisfaction of his claim, or an offer to do so. The common carrier, warehouseman, and all the class of bailees who have a beneficial interest, have a right of possession and a lien on the thing. These rights are inviolable until the acts and purposes for which they were created have been performed.

Inasmuch as the attaching creditors did not pay or tender to Crawford, the common carrier, his legal charges on the cotton, they had no right to take it out of his possession.

*Judgment affirmed.*