E. R. HART ET AL. v. LIVERMORE FOUNDRY & MACHINE CO.

|  |  |
|---|---|
| 72 | 809 |
| f93 | 620 |

AND

CHEMICAL NATIONAL BANK ET AL. v. E. R. HART ET AL.

1. CONFLICT OF LAWS. *Contract. Validity. Place of performance.*

    While, ordinarily, the validity of a contract is governed by the *lex loci contractus*, where a different place of performance is fixed therein, the presumption is that the parties contracted with reference to the law of that place. *Shacklett v. Polk*, 51 Miss., 378.

2. SAME. *Contract of sale. Place of execution.*

    Accordingly, a written contract for sale of lumber, to be sawed, inspected, paid for, delivered and received in this state. is governed by the laws of this state, both as to its obligation and execution, though made and signed in Tennessee.

3. SALE. *When title passes. Property to be inspected and delivered.*

    Under a contract by one to sell lumber, sawed by him in this state in a certain year, the buyer, a nonresident, to advance certain amounts when the lumber is sawed and in piles, and complete payment to be made when the lumber is inspected and loaded on the cars, the title does not pass to the buyer upon the piling of the lumber and making of advances, but remains with the seller until full payment.

4. EXECUTORY CONTRACT. *Agreement to hold property. Title.*

    An indorser of certain bills, to induce a bank to discount them, made the following agreement in writing with the bank : " I have about 600,000 feet of lumber that I have sawed for the Cairo Lumber Company, a sufficient amount of which I will hold until you are paid the amount of your discount and the entire indebtedness of the Cairo Lumber Company for which I am liable." *Held*, a mere executory contract, under which no title or lien accrued to the bank. *Alexander v. Berry*, 54 Miss., 422.

5. ESTOPPEL. *In whose favor it operates. Change of position.*

Estoppel operates only in favor of one who, induced by the acts or representations of another, so changes his situation that injury would result if the truth were known.

6. ATTACHMENT. *Property bonded by claimant. When in custodia legis.*

Personal property seized in attachment and delivered to a claimant under a forthcoming bond, is no longer in *custodia legis*, and is subject to execution or attachment by creditors of the claimant.

7. SAME. *Injunction against. Judgment on merits. Res judicata.*

Notwithstanding defendant in attachment has enjoined various attaching creditors from proceeding with their suits in so far as to disturb his possession of certain property claimed to be in *custodia legis* under other proceedings, such creditors may proceed to obtain personal judgments, and defendant who fails to defend on the merits is bound by such judgments.

8. FOREIGN CORPORATIONS. *Unlawful business. Note. Bona fide holders.*

Under the statute of Tennessee forbidding corporations to do business in that state without complying with certain conditions, but not declaring their contracts or securities void in case of violation, a note executed in that state by a corporation delinquent under the statute, though void as between the parties and those taking with notice, is good in the hands of a *bona fide* purchaser for value.

9. SAME. *Statute of Tennessee. Contracts to be performed elsewhere.*

A foreign corporation, though having an office in Tennessee and there engaged in dealing with citizens of other states with reference to property situated elsewhere, and as to which persons and property Tennessee has no concern, is not engaged in business in that state within the meaning of its statute forbidding foreign corporations to do business in that state without complying with certain specified conditions.

10. BILLS AND NOTES. *Indorser bound, though note invalid.*

Although a note or bill is void in its inception, one who, for a new and valuable consideration, indorses it, is bound thereon.

APPEAL and cross appeal from the chancery court of Tunica county.

HON. W. R. TRIGG, Chancellor.

The opinion states the case.

*W. A. Percy*, for appellants, Chemical National Bank and Livermore Foundry & Machine Company.

1. The contract of March 14, 1892, passed no title. It was purely executory, and referred to uncut lumber, and is identical in character with ordinary farming contracts for advances to make a crop thereafter to be shipped in payment for the advances. *Allen* v. *Poole*, 54 Miss., 323.

2. The contract was void, being made in Tennessee by the Cairo Lumber Company, which was unlawfully doing business in that state. See *Cary-Lombard Lumber Company* v. *Thomas*, 92 Tenn., 587; *Williams* v. *Bank*, 71 Miss., 858.

Nothing was thereafter done to invest the lumber company with title. There was never any delivery of possession. The sale tickets did not purport to show the sale of any specific lumber. They were merely in aid of that part of the contract providing for an agreed estimate by which to regulate advances.

3. Both the contract of March, 1892, and the sale tickets, were void, being contracts made in Tennessee in violation of the foreign corporation law.

4. Hart retained possession, and had the right of retention until the lumber was paid for and delivered. The very drafts which had been given as advances on this lumber were protested at maturity, and there was a total failure of consideration.

5. The injunction sued out by Hart did not prohibit the attaching creditors from proceeding to judgment, and, therefore, Hart is concluded by the judgment in favor of the Chemical National Bank and the Foundry & Machine Company. Besides, the Chemical National Bank is the holder of commercial paper for value without notice of any defect therein.

6. After Hart had taken possession of the paper under his forthcoming bond, it was no longer in *custodia legis*, and was subject to attachment by his creditors. It is only where successive attachments are sued out against the same defendant that the property bonded is exempt from a second seizure under

§ 149, code 1892.    On this subject, see Wells on Replevin, § 460; 3 Porter, 138; 4 Metc., 444; 16 Mass., 465; 10 Pet., 400; 11 Wis., 380.

The letter to the First National Bank, signed by E. R. Hart, agreeing to hold the lumber until the bills indorsed by him were paid, did not confer on the bank any interest or lien. Jones on Chattel Mortgages, § 8.    See *Allen* v. *Montgomery*, 48 Miss., 101; *Newman* v. *Bank*, 66 *Ib.*, 323; *Weathersby* v. *Sleeper*, 42 *Ib.*, 732; Jones on Liens, § 48; *Alexander* v. *Berry*, 54 Miss., 422; 105 Mass., 417.

The notes and drafts in the hands of the Chemical National Bank are valid for the following reasons:    (1) Because the Tennessee statute does not make negotiable paper given by delinquent corporations void when in the hands of an innocent holder who has acquired it in the due course of business.    See Daniel on Neg. Insts., 85; 9 Wend., 170; 147 U. S., 59; 45 N. Y., 762; 2 Allen, 266; Randolph on Com. Paper, § 559; Byles on Bills, 145; 70 N. C., 191; 1 Heisk., 170; 9 Gray, 329.    I find no case where negotiable paper was held invalid because of its being in violation of a statute except in usurious and gaming transactions, and these were under peculiar statutes. (2) The transactions between Hart and the Cairo Lumber Company did not constitute a " doing of business " in the state of Tennessee.    The whole business of the company was to make contracts in Memphis for the operation of sawmills in Mississippi, and for the shipment of their output to Chicago.    In *Cary-Lombard Lumber Company* v. *Thomas, supra*, the lumber was in the state of Tennessee, and shipped from the yards there. A farmer, lawyer or doctor engaged in business entirely in Mississippi can hardly be said to be doing business in Tennessee because he makes a contract there for work to be done in this state.    See 4 Col., 369; 2 S. Dak., 596; 33 W. Va., 566; 21 Am. & Eng. Corp. Cas., 650; 8 *Ib.*, 178; 32 *Ib.*, 201.    (3) The contracts between Hart and the lumber company were interstate commerce, and the Tennessee statute cannot be applied.

*Milling Company* v. *Gorten,·* 93 Tenn., 590; 113 U. S., 727;
Rorer on Interstate Law, 381.   See also *First National Bank*
v. *Duncan,* a recent Tennessee case not yet reported, which
holds that a Kentucky coal company could acquire real estate
in Tennessee for a branch office for carrying on interstate com-
merce.

*J. A. P. Campbell,* on the same side.

The rights of the Chemical National Bank, as the holder of
the notes and acceptances of Hart, are not affected by the stat-
ute of Tennessee forbidding foreign corporations to do business
in that state without compliance with certain conditions.   These
accrued directly out of the transactions in regard to lumber  to
be produced and trees to be cut in Mississippi and to be shipped
thence to Illinois, or elsewhere out of Mississippi.   Besides,
they are valid on another ground.   The dealing between the
Cairo Lumber Company and Hart was interstate commerce, and
not subject to regulation by the laws of Tennessee.   That state
could not, if she had tried, keep foreign corporations or those
representing them, out of the state, or in any way interfere
with commercial intercourse among states by individuals or
corporations.   Her own court has so decided, for, while in
*Cary-Lombard Lumber Co.* v. *Thomas,* 92 Tenn., 587, it is
held that contracts made in that state by a delinquent foreign
corporation for the delivery of lumber from its yard in Ten-
nessee to a citizen in Tennessee were void, and could not be
enforced by such corporation, yet in *Milling Co.* v. *Gorten,* 93
Tenn., 590, it is held that the statute has no application to a
contract made in that state by an agent of a foreign corpora-
tion for delivery and erection there of machinery from another
state, and that a mortgage executed in Tennessee on land there,
to secure the contract price for such machinery, is valid.   That
court has also lately held that a Kentucky mining corporation,
engaged in delivering coal from its mines in Kentucky for sale
in Tennessee, did not violate the said statute by purchasing land

in Tennessee for constructing a depot for the transacting of such business. See, also, *Cooper* v. *Ferguson*, 113 U. S., 727; *Robbins* v. *Shelby*, 120 *Ib.*, 489; *Overton* v. *Vicksburg*, 70 Miss., 558; *Ficklen* v. *Shelbey County*, 145 U. S., 1; *McCall* v. *California*, 136 U. S., 104; *Railroad Co.* v. *Pennsylvania, Ib.*, 114; *Ware* v. *Shoe Co.*, 92 Ala., 145; 19 Col., 310.

Interstate commerce embraces all the means, instruments and places as well as the subject-matter of intercourse and traffic between states. This is the definition of Pomeroy, quoted with approval by the supreme court in *McCall* v. *California, supra.*

Apart from the above views, the dealings between the lumber company and Hart, though had in Tennessee, were not carried on there within the purview of the statute. The statute never intended to prevent a foreign corporation from securing a *locus standi* for dealing with subjects of another state, or from availing of the services of the citizens of Tennessee as an intermediary or conduit through whom to contract about matters or things in another state. It plainly refers to holding property in Tennessee, or doing business there of a character to give it such fixed locality as property has. It does not contemplate interference with the right conferred by comity to avail of a place in Tennessee as a convenient point to transact business of any kind with reference to persons or things in another state. The requirement is not for revenue, or a police regulation, nor is it in hostility to nondomestic corporations, but applies to only such as desire to acquire or hold property in Tennessee or carry on its business there in such a manner, or of such a character, as to constitute domestic business in Tennessee. On this subject, see *Crandall* v. *Nevada*, 6 Wall., 35; *Com.* v. *Biddle*, 139 Pa., 605; *Ins. Co.* v. *Kinyon*, 37 N. J. L., 33; 3 Comstock, 266; *Ford* v. *Ins. Co.*, 6 Bush, 133; 32 Barb., 626; 2 Kernan, 258; 117 N. Y., 241; 129 Pa., 217; 42 La. Ann., 516; 71 Ala., 60; 94 *Ib.*, 456; 44 Wis., 387; 29 Fed. Rep., 37; 32 *Ib.*, 802; 41 *Ib.*, 643; 9 Blatch., 390; 33 W. Va., 566.

The consequences of any broadening of the scope of the Tennessee statute are so far-reaching, and may be so serious, as to admonish of the propriety of the utmost caution to avoid any view or even any intimation that goes beyond the necessity of this case.

Although the notes and bills may be void by the law of Tennessee, this cannot affect an innocent holder. There seems to be a general agreement among text-writers and courts that unless the statute expressly declares a contract void, such consequences will not attach to it in the hands of a holder for value. Daniel on Neg. Inst., §§ 197, 807, 808 and notes; Story on Bills, § 189; 1 Parsons on Bills, 279; 2 Randolph on Com. Paper, §§ 517, 518; Edwards on Bills and Notes, 337; Chitty on Bills, 116; Byles on Bills, 145; 21 Wall., 221; 53 Ill., 455; 70 N. C., 191; 31 N. H., 426; 41 *Ib.*, 32; 9 Neb., 31; 6 Wend., 616; 6 Hill, 499; 6 Hun, 384; 56 Mo., 317; *Ib.*, 309.

No title or lien passed to the First National Bank by reason of the letter signed by Hart. It simply promised to hold a sufficient amount of the lumber. It is void for uncertainty; and, besides, being made in Tennessee by a foreign corporation illegally there, is void.

4. There is nothing in the contention that the bill of sale from the Cairo Lumber Company to the Evanston National Bank is void because of the insolvency of the lumber company. *Beach* v. *Miller*, 130 Ill., 162, only decides that an insolvent corporation cannot prefer a managing officer or director. Even that doctrine is repudiated in *Hollins* v. *Brierfield*, 150 U. S., 371; *Arthur* v. *Bank*, 9 Smed. & M., 394; *Palmer* v. *Hutchison*, 11 So. Rep., 789; Beach on Corp., § 358.

*F. A. Montgomery*, for appellants, E. C. Atkins & Co., J. E. P. Baxley, and I. Goldsworth & Co.

The effect of the sale tickets and the filing and marking of the lumber was to vest the title in the lumber company, notwithstanding Hart was to haul it to the railroad for shipment.

Benjamin on Sales, 329–332. This being true, the fact that the bill of sale had been made to the Evanston National Bank, of which the attaching creditors knew nothing, could not affect their priority. Even though the title to the lumber never passed to the Cairo Lumber Company, Hart and the First National Bank, knowing that these creditors were about to attach it as the property of the Cairo Lumber Company, stood by and permitted them to attach it as such. In doing so, they followed the example set by Hart and the First National Bank, and, therefore, the latter are estopped to deny, as against these creditors, that the lumber was the property of the lumber company. *Roach* v. *Brannon*, 57 Miss., 490; 9 Am. Rep., 587; 32 *Ib.*, 784; *Madden* v. *Railroad Co.*, 66 Miss., 258.

*Calvin Perkins*, for appellants, Evanston National Bank, Barksale, Denton & Co. and Strange & McClellan.

1. The place of payment or performance is the place of the contract. 2 Parsons on Con., 583; *Brown* v. *Freeland*, 34 Miss., 181; *Dalton* v. *Murphy*, 30 *Ib.*, 59; *Bank* v. *Williams*, 46 *Ib.*, 618; 135 Mass., 126.

2. By the terms of the letter, the title was to pass when the lumber was loaded on the cars at Evansville. The sale tickets changed this, and substituted symbolical delivery at the mill, so far only as the title was concerned. The intent was to place the legal title in the lumber company. The use made of the tickets, by attaching them to the drafts, shows this. As to what is a good symbolical delivery, see 35 Ark., 190; 31 *Ib.*, 131; 8 How. (U. S.), 38.

3. The verbal pledge of the lumber, or, rather, of a "sufficient amount thereof," coincided exactly with the written declaration of trust. Both are void for uncertainty in the description of the property. Besides, the pledge being made in Tennessee by a foreign corporation having no right to do business in that state, was void. 71 Miss., 878.

4. There is nothing in the contention that the bill of sale to

the Evanston National Bank is void because of the insolvency of the lumber company. *Beach* v. *Miller*, 130 Ill., 162, only decides that an insolvent corporation cannot prefer a managing officer or director. Even that doctrine seems to be repudiated in *Hollins* v. *Brierfield*, 150 U. S., 371. See, also, *Arthur* v. *Bank*, 9 Smed. & M., 394; *Palmer* v. *Hutchison*, 11 So. Rep. (Miss.), 789; 1 Beach on Cor., § 358.

*Geo. Gilham, St. John Waddell* and *L. P. Cooper*, for E. R. Hart and First National Bank of Memphis, appellees:

A note given in violation of a penal statute is void, even in the hands of an innocent holder. 9 Ala., 549; 2 Randolph on Com. Paper, 517, 534, 557; 1 Daniel on Neg. Insts., § 197; Byles on Bills, 137, 146. Such is the law of Tennessee, where the contract in this case was made. *Snoddy* v. *Bank*, 88 Tenn., 573. See, also, 2 Am. & Eng. Enc. L., 368; 4 Pet., 410; Story on Promissory Notes, §§ 189, 192; 73 Ga., 641; 5 Mass., 286; 6 Wendell, 615; 84 Ill., 292; 22 Ind., 11; 21 Ga., 195.

Although the party executing such a note or bill cannot be bound, the indorser will be liable upon his indorsement, which warrants its validity and is a separate and independent contract. 1 Daniel on Neg. Insts., § 807.

The contention that the Cairo Lumber Company was not doing business in Tennessee, is not supported by the record, for it is shown that it had an office and manager in Memphis. The bills and notes in question cannot be taken as part of the lumber contract. It is impossible to locate and tell, with certainty, what the real origin of the paper was. It was made in Memphis, and in terms payable there.

The Chemical National Bank and other attaching creditors had submitted to the jurisdiction of the chancery court on the bill brought by Hart, and had answered to the merits. The court, having thus acquired complete jurisdiction, retained the bill and did equity between the parties. Having enjoined the suits at law, it was unnecessary for Hart to defend the cases

further.   The taking of the judgments therein was shown to
have been a surprise to him, and the chancery court, having
complete jurisdiction, properly enjoined the judgments.   In
suing out the injunction, Hart relied on the case of *Bishop* v.
*Rosenbaum*, 58 Miss., 84, his counsel not being aware that the
court had modified that decision.   Under it, it is manifestly
illegal for successive attaching creditors to seize the property
after Hart had given bond therefor.

Under the laws of Illinois, the sale of the lumber by the
Cairo Lumber Company, when insolvent, to the Evanston Na-
tional Bank, was void.   *Beach* v. *Miller*, 130 Ill., 162.

The letter to the First National Bank, signed by Hart, cer-
tainly gave the bank a lien or claim on the lumber, and the at-
taching creditors of Hart had full notice of this equitable lien,
and, we contend further, that the lumber was then in *custodia
legis* and not subject to attachment.

Argued orally by *Calvin Perkins*, *W. A. Percy*, and *St.
John Waddell*, for their respective clients.

COOPER, C. J., delivered the opinion of the court.

The Cairo Lumber Company, a corporation organized under
the laws of the state of Illinois, and having an office in the city
of Memphis, Tenn., was there transacting business in the year
1892.   It had not filed its charter with the secretary of state
of Tennessee nor filed an abstract with the register of Shelby
county, in which the city of Memphis is situated, as required
by the laws of the state of Tennessee, by which it is provided:
"That each and every corporation created or organized under
or by virtue of any government other than that of this state,
for any purpose whatever, desiring to own property or carry
on business in this state of any kind or character, shall first file
in the office of the secretary of state a copy of its charter, and
cause an abstract of same to be recorded in the office of the
register in each county in which such corporation desires or
proposes to carry on its business or to acquire or own property,

as now required by § 2 of ch. 31 of acts of 1877. . . That it shall be unlawful for any foreign corporation to do, or to attempt to do, any business, or to own or to acquire any property in this state, without first having complied with the provisions of this act; and a violation of this statute shall subject the offender to a fine of not less than $100 nor more than $500, at the discretion of the jury trying the case.''

One E. R. Hart was, in March, 1892, the owner of a sawmill located at Evansville, and a co-partner in another located at Hollandale, in this state. The business at Evansville was conducted in the name of E. R. Hart, that at Hollandale in the name of E. R. Hart & Co. On the nineteenth day of March, 1892, a contract was entered into in the city of Memphis between E. R. Hart and the Cairo Lumber Company, evidenced by the following letter and Hart's indorsement thereon, viz. :

"MEMPHIS, TENN., March 19, 1892.
"*Mr. E. R. Hart, Memphis, Tenn. :*

"DEAR SIR—We hereby enter into contract with you to furnish us with your entire cut of white ash and quartered and plain oak for the year ending January 2, 1893. The entire quantity of quartered and plain oak not to exceed the cut of ash; subject to our inspection and measurement. Stock to be cut as per bills rendered by us. Deliveries to commence as soon as weather and roads will permit, and to continue in about equal monthly shipments. Prices as follows, f. o. b. cars, Evansville, Mississippi:

| | | |
|---|---|---|
| White ash, 1 to 4, first and second.......................... ......$20 00 | | |
| White ash, common and short clears 4 in. 6 in. 8 feet............. 9 00 | | |
| Quartered oak, first and second..............$25 00 | mostly white oak. | |
| Quartered oak, common................... ..... 13 00 | mostly white oak. | |
| Plain sawed oak, first and second............ 17 00 | mostly red oak. | |
| Plain sawed oak, common................... . 8 00 | mostly red oak. | |

We to advance you as follows:

| | | |
|---|---|---|
| Ash, first and second............$17 00 per M. | Common..$ 6 00 per M. | |
| Quartered oak, first and second.. 22 00 per M. | Common.. 10 00 per M. | |
| Plain sawed oak, first and second 13 00 per M. | Common.. 6 00 per M. | |

Advance to be made when timber is cut and in piles, on agreed estimate made with our representative; we to give you our sixty and ninety days' paper therefor, and balance to be paid when lumber is inspected and loaded in cars. Stock to be well manufactured, cut full, plump size and thickness; the quartered oak, first and second, to run five inches and up in width; plain sawed oak and ash, first and second, to run six inches and up in width. For ash lumber shipped as soon as cut, terms cash when stock is inspected and loaded in cars. In the event of the first and second quartered oak averaging ten or eleven inches wide, we agree to advance the price to $27 per 1,000 feet. The acceptance of the above will constitute a contract between us.                          CAIRO LUMBER COMPANY,

            MACLEAN, *President.*

Accepted.    E. R. HART.

The privilege to sell your plain sawed oak to others is hereby accorded.                    MACLEAN, *President.*"

This contract related only to the output of the Evansville mill. As the lumber was sawed and stacked, its quantity was estimated by an inspector of the Cairo Lumber Company and by Hart, and thereupon written statements—called by the counsel representing parties in this suit claiming adversely to Hart, sales tickets, and by counsel for Hart and those claiming through him, memoranda—were from time to time made and attached to bills of exchange drawn by Hart on the Cairo Lumber Company, or drawn in his favor by the secretary. These bills were time bills, generally maturing at sixty or ninety days, and, as is conceded by all parties, were for a time intended to represent the advances stipulated in the contract to be made by the company to Hart. For convenience, we will call the tickets above referred to lumber tickets. As the bills to which these lumber tickets were attached fell due, it was frequently, if not generally, found that the Cairo company was not prepared to pay them, and so renewal bills would be given the bank at which

the originals had been discounted, and · to these renewal bills
other lumber tickets would be attached.   The new bills thus
given would sometimes be provided for in the same way by
other bills, to which like lumber tickets were attached.   The
Cairo Lumber Company, and those claiming through it, claim
that such of these lumber tickets represented that quantity of
lumber actually cut by Hart, separated into piles, measured and
sold by him to it, and that the tickets were given to indicate a
delivery thereof to the company.   Hart and those claiming
under him assert that they are mere memoranda to indicate to
the Cairo company what quantity of lumber it should make ad-
vances on under its contract, and that the lumber tickets at-
tached to the renewal bills were intended as substitutes for those
attached to the originals.   Hart and the Cairo Lumber Com-
pany did not confine their business to the matters contracted
about.   In some manner not clearly shown, the lumber from
the Hollandale mill was also shipped to the order of the Cairo
Lumber Company, who made advance payments thereon, and
the balances over such sales, advances, etc., and the business of
that mill generally, seem to have been inextricably mixed and
mingled with the business of the Evansville mill.   In addition
to this, the Cairo Lumber Company bought from third persons,
Messrs. Everman & Co., certain timber rights, for which it
gave its ten notes of $800 each, and took from Hart his notes,
payable to itself, for like amounts.   The understanding, Hart
says, was that these notes should not be discounted by the Cairo
company, but were to be paid to it by him in lumber, and it
was to pay its notes to Everman & Co.   The Cairo company
paid a part of the debt to Everman .& Co., and Hart claims to
have paid, by shipments of lumber, some of the notes he had
given on account of this purchase, and that the Cairo company,
in disregard of its promise, has negotiated to innocent holders
others of the series of notes he gave on this account and which
he does not really owe, because the company has not paid its
notes to Everman & Co., who have instituted an action to sub-

ject the timber to their debt. In addition to this, Hart claims that he is bound, as accommodation indorser or acceptor, for the Cairo company in large amounts. All these transactions seem to be inextricably confused, and no one pretends that it is now possible to trace the history of any one of the various bills of exchange, except four, which were discounted by the First National Bank of Memphis on April 24, 1893. On that day Hart and MacLean, the president of the Cairo Lumber Company, applied to that bank to discount for the Cairo Lumber Company its four bills of exchange for $500 each, drawn on itself in favor of Hart and by him indorsed. This the bank agreed to do, upon Hart's entering into the following written obligation:

"*C. W. Schulte, Esq., Cashier First National Bank, Memphis:*

"DEAR SIR—We have, at our Evansville set, about 600,000 feet lumber that we have sawed for the Cairo Lumber Company, sufficient of which we will hold until you are paid the amount of your discount to-day, $2,000, or any other indebtedness of the Cairo Lumber Company on which I am liable.

"Yours truly,      E. R. HART."

On the ninth of May, 1893, the Cairo Lumber Company suspended payment. Immediately following this, attachments were sued out, in the order named, by the following creditors of the Cairo Lumber Company, and levied upon lumber in controversy, or some part thereof:

May 10, Barkskale, Denton & Co. ....................... for $1,500 00
May 11, First National Bank of Memphis................for  6,402 80
May 11, C. E. Atkins & Co...............................for    415 58
May 11, I. Goldsmith & Bro..............................for    123 40
May 11, Strange & McClellan........ ....................for  1,553 93
May 12, First National Bank of Memphis................for  6,190 00
May 18, J. E. P. Baxley............................. ..........for    400 00

On the eleventh day of May, 1893, the Cairo Lumber Company, at Evanston, Illinois, in consideration of the sum of $14,-000, which it then owed to the Evanston National Bank, of

Evanston, Illinois, gave to that bank a sale bill of "all the lumber situated at the mill yard known as thè E. R. Hart mill yard, about four miles east of Evansville, Mississippi." On the twentieth day of May, the Evanston National Bank interposed a claim to all the lumber attached in the cases above stated, and executed its forthcoming bond therefor, and the property was turned over to it by the officers in charge. At the return term of its writs, the First National Bank of Memphis dismissed its attachments. In all the other cases, judgments in favor of the plaintiffs against the defendant therein, the Cairo Lumber Company, were rendered, but no condemnation of the attached property to sale was made, because of the injunction issued in this cause. On the twenty-fifth day of May, the Chemical National Bank, claiming to be creditors of the Cairo Lumber Company to the amount of $65,550.76, exhibited its bill in chancery against all the attaching creditors above named, and against the Cairo Lumber Company and the Evanston National Bank, averring that said Cairo Lumber Company was not liable to said attachments; that the conveyance from that company to the Evanston National Bank was invalid because the Cairo Lumber Company was an Illinois corporation, and that, being insolvent and its insolvency known to the Evanston National Bank, it attempted, in the state of Illinois, to give a preference to one of its creditors contrary to the laws of that state. The bill prayed that a receiver might be appointed to take charge of the property of the Cairo Lumber Company, to be found in this jurisdiction, and to apply the proceeds thereof equitably among all creditors. On this bill, the chancellor appointed a receiver, who gave bond as such and took possession of the lumber now in controversy. On the fifth day of June, Hart exhibited an original bill against all of the parties in the foregoing named suits, asserting ownership in himself in all the lumber seized in said causes, and which was all then in the hands of the receiver. He sets out a history of the contract and dealings between himself and the

Cairo Lumber Company, and averred that, of the advances made by the company to him on account of the lumber cut by him, more than $6,000 thereof was represented by dishonored paper then held by the First National Bank of Memphis, on which he was liable as indorser or acceptor. As one of the principal contentions in the cause rests upon one of the averments of this bill, we extract and set it forth. It is as follows: "Complainant would further show that when he had cut and put in piles or on sticks the 600,000 or 700,000 feet of lumber as aforesaid, and was entitled to his first payment on the same under said contract, the said company, by its president and complainant, came to the defendant, the First National Bank of Memphis, and with said bank made an agreement for said payment which was satisfactory to all parties. The contract between complainant and the lumber company was shown to Mr. Schulte, the cashier of said bank, and it was fully explained to him by the president of the lumber company and complainant, that complainant, under this contract, had then, on sticks or in pile, some 600,000 or 700,000 feet of lumber sawed under said contract, worth $12,000, the title to all of which, and the possession thereof, was to remain in complainant until he was paid in full for the lumber. He was to hold the title and possession for his and the bank's accounts. Upon this representation as to the amount and value of the lumber at Evansville, and upon examination of the contract, and upon the representation of both the complainant and the president of the lumber company that all of said lumber was to remain in the possession of complainant until whatever advances the bank had before then made to said lumber company, or might then make, were paid in full, the bank, acting by its cashier, Mr. Schulte, then and there discounted drafts of said company, drawn in favor of complainant, for $2,000, and is now the holder and owner of the acceptances then discounted, and of the acceptances which had, previous to that time, been discounted by the bank, a large part of which had not been paid. The

$2,000 of acceptances then discounted, and those which had been previously discounted by the bank, and which have not been paid, constitute the paper aforesaid which the bank now holds.'' Upon presenting this bill to the chancellor at chambers, he made an order reciting that, it appearing by the bill that Hart was then owner of the lumber in the hands of the receiver, the same should be delivered to him by the receiver, upon the execution of a bond, in the penalty of $12,500, conditioned to have said lumber, or its value, forthcoming to satisfy any decree that might be made in the cause in which the receiver had been appointed.    This order was made on June 2, 1893, but the bond required was not filed until the twentieth day of June, at which time the receiver delivered to Hart the lumber.    On the tenth day of July, the Chemical National Bank sued out an attachment at law against E. R. Hart, which, on the eleventh day of July, was levied on a part of the lumber which the receiver had delivered to him.    This attachment was for the sum of $2,986.80.    From the declaration afterwards filed in that cause, it appears that the attachment was on the following causes of action:

1. Three drafts drawn by the Cairo Lumber Company on E. R. Hart, and accepted by him, payable to the order of Cairo Lumber Company, and by it indorsed to the plaintiff—one for $805.20, dated March 2, 1893, due ninety days after date; one for $400, dated March 15, 1893, due ninety days after date; one for $650, dated March 25, 1893, due ninety days after date.    Two notes executed by E. R. Hart, payable to the order of the Cairo Lumber Company, and indorsed to plaintiff—one of date February 23, 1893, for $570.80, due three months from date; one of same date, and for like amount, due four months from date.    One note of E. R. Hart & Co., of date April 17, 1893, payable June 26, 1893, for $610, payable to Cairo Lumber Company and indorsed by plaintiff.

On the eleventh day of July the Chemical National Bank exhibited its bill against E. R. Hart, praying an attachment in

chancery against the defendant to recover a debt of $7,362.05, of which a part was composed of some of the acceptances and notes for which the attachment at law had been sued out, and the remainder was represented by other notes or acceptances executed by Hart to the Cairo Lumber Company, but which had not then matured.    The bill described particularly the property sought to be subjected, which consisted, in part, of the lumber delivered by the receiver to Hart.    On this bill the chancellor made an order in vacation directing the property described in the bill to be seized by the sheriff, upon the complainant therein entering into bond as prescribed in the order.    We depart from the chronological statement of the facts, to say that the bond required by this order of the chancellor was not executed by complainant until November, 1893, whereupon a writ of seizure and sequestration was issued and levied upon the property described in the bill in that cause, which property was redelivered to Hart upon the execution of a bond by him.    Some time in July, the exact date not being shown, Sledge & Norfleet sued out a writ of attachment against E. R. Hart, for a small amount, before a justice of the peace, and caused the same to be levied on the lumber in controversy.    On July 28, the Livermore Foundry & Machine Company sued out an attachment at law against E. R. Hart to recover the sum of $685, and caused said writ to be levied on the lumber.    On the twenty-first of July, Hart filed an amended and supplemental bill, in which he restates and reaffirms the matters and things stated in his original bill of June fifth.    To this supplemental bill all the defendants in the original bill are made parties, as are also all other persons plaintiffs in any of the actions hereinbefore referred to.    The complainant then details the various proceedings under which the property delivered to him by the receiver, under the order made in his original bill, has been again seized.    He claims that the property in his possession is *in custodia legis*, and was not, therefore, subject to attachment at the suit of any, of the parties plaintiff in said

actions; that by his original bill he had brought before the
court all persons then known to him asserting any rights against
the lumber, for the purpose of having all matters in contro-
versy settled in one proceeding; that proceedings in the causes
in which the writs were subsequently levied upon said property
should be enjoined, and the court should retain full control of
the lumber and grant full and final relief by one decree.   The
claim set up by the Chemical National Bank in its suits at law
and in equity are averred to be void, for the reason that the
Cairo Lumber Company was, at the times when the notes and
bills of exchange sued on were given, unlawfully engaged in
business in the state of Tennessee, by reason of which fact all
said notes and bills were void, and imposed no obligation on
him, either to the Cairo Lumber Company or to persons claim-
ing by or through that company.   An injunction was prayed
and obtained restraining all the defendants from further pro-
ceeding in their suits at law and in equity in so far as to dis-
turb the possession of the complainant of the lumber delivered
to him by the receiver.   The Livermore Foundry & Machine
Company, the Chemical National Bank, Strange & McClellan,
and Sledge & Norfleet proceeded to judgment against Hart in
their several respective suits, but no condemnation of the at-
tached property was made, because of said injunction.   In July,
1894, Hart made a formal mortgage of the lumber to the First
National Bank, to secure the payment of the claims it holds as
hereinbefore described.   All parties defendant answered the
original and amended and supplemental bills.   On final hearing
the court decreed payment of the judgment in favor of the
Livermore Foundry & Machine Co., vacated and annulled the
judgment recovered by the Chemical National Bank, and declared
invalid all the notes and bills of exchange sued on in that ac-
tion or in the attachment in chancery sued out by that bank
against Hart; perpetuated the injunctions against all parties
except the Livermore Foundry & Machine Company.   It de-
clared valid all the bills of exchange held by the First National

Bank of Memphis, recognized and enforced the mortgage executed by Hart to that bank *pendente lite,* and allowed, as a charge against the lumber, about $2,000 expended by the bank in insuring the lumber and getting it into market. From this decree all parties prosecute appeals. The controversy presents many phases, but, as there are some questions common to several, we will, in considering these questions, group the litigants in classes and then proceed to examine, separately, those points of controversy which relate to only one single defendant. The most obvious and general classification is that in which the defendants may be regarded (1) as creditors of the Cairo Lumber Company attaching at law, (2) as creditors of Hart attaching at law.

The Cairo Lumber Company has interposed no defense to the attachments at law, and hence no question is involved as to its liability on the debts for which the attachments were sued out, and to attachments thereon. As to these actions, the question presented is whether the Cairo Lumber Company had such an interest in the lumber as to subject it to attachment for its debts. The chancellor held that the contract between Hart and the Cairo Lumber Company was a Tennessee contract, and, as such, illegal, and therefore void, because the company had not complied with the Tennessee statute requiring foreign corporations to record their charter in that state before engaging in business therein. If this was a Tennessee contract, and therefore to be governed by the laws of that state, it would follow that no right whatever was secured by the delinquent corporation. *Cary-Lombard Lumber Co.* v. *Thomas,* 92 Tenn., 587. But we think the contract, though entered into in the state of Tennessee and evidenced by writing there subscribed by the parties, was, in legal contemplation, a contract governed by the laws of this state both as to its obligation and execution. The lumber was to be cut by Hart in this state, was to be inspected and paid for, delivered and received here. Ordinarily, the validity of a contract is determinable by the *lex*

*loci contractus*, but where, by the contract, a different place of performance is fixed, the presumption is that the parties, as they lawfully may do, contract with reference to the law of such place. *Dalton* v. *Murphy*, 30 Miss., 59; *Bank* v. *Williams*, 46 *Ib.*, 618; *Shacklett* v. *Polk*, 51 *Ib.*, 378; *Osgood* v. *Bander* (Iowa), 1 Law. Rep. Ann., 654, and note.

Treating the contract as a Mississippi contract, the next question is, what interest in the lumber, if any, passed to the Cairo Lumber Company upon the execution by it of its time acceptances given for the advances stipulated by the parties? In this aspect of the case there is but little room for controversy. Clearly neither title nor possession was to pass until payment of the whole purchase price. The putting the lumber in piles was evidently not provided for in order that the title or possession of the portion thus dealt with should pass to the purchaser upon the payment of the sums to be paid as advances upon it, but was intended only as the means of determining upon what quantity the advances stipulated for should be made. We are not, therefore, called upon to consider the nature or extent of the right of a seller in possession of property sold to retain the property until payment of the purchase price. Hart's possession was not that of a vendor retaining possession of the property of the buyer. The lumber was his, both possession and title remaining with him; and a tender of the balance due by the purchaser would not have created any property right in the buyer, whose whole remedy would be to sue for the breach of the executory contract if the seller should decline to consummate the sale according to the terms of the contract. "Where, by the terms of the contract, the property has not passed to the buyer in the thing which the vendor has agreed to sell, it is obvious that the buyer's remedy for the breach of the vendor's promise is the same as that which exists in all other cases of breach of contract. He may recover damages for the breach, but has no special remedy growing out of the relations of vendor and vendee." Benj. on Sales, § 870.

If the seller had had only a lien for the unpaid purchase price, the property in his hands could not have been seized under attachment by the creditors of the buyer, without a precedent payment or tender of the money due. *Wolfe* v. *Crawford*, 54 Miss., 514. *A fortiori*, it was exempt from such seizure when, as here, the possession, right of possession and title remained in the seller. Freeman on Executions, §§ 147, 158. It follows, of course, from what we have said, that the property was liable to attachment by the creditors of Hart. As to the attaching creditors of the Cairo Lumber Company, the decree of the court below must be affirmed.

The next inquiry arising in the orderly development of the cause, is whether the record discloses a right, on the part of any one of the numerous defendants, to assert title through the Cairo Lumber Company, as against Hart, because of any act done by him by which, as against such party, he is estopped to deny the fact that title to the lumber was in that company. The only party to the record whose claim presents any feature of this character, is that of the Evanston National Bank. This defendant claims to be the owner of the property by virtue of an assignment or sale thereof, made to it by the Cairo Lumber Company on May 10, 1893. It produces in evidence a number of the lumber tickets which had been attached to the bills of exchange when negotiated by Hart or the Cairo Lumber Company. These tickets are introduced, however, only as evidence tending to support the claim of this defendant that, as matter of fact, there were completed sales of the lumber made by Hart to the Cairo Lumber Company. It is not pretended, in the pleading or evidence, that the possession of these tickets by the Cairo Lumber Company was relied on by the bank as representations made by Hart of the fact that title was in that company, and that, acting on the faith of such representations, it became the purchaser of the lumber. Estoppel operates only in favor of one who, in reliance upon the act, representation or silence of another, so changes his situation as that injury would

result if the truth were shown. This defendant was not the holder of any of the bills of exchange to which these tickets had been attached. It was a general creditor of the Cairo Lumber Company, and claims the lumber as having been bought from the Cairo company, and paid for by passing the purchase price to the credit of the Cairo company on its general account. The claim of this appellant is, therefore, disposed of by the statement that, neither in fact nor by estoppel operating against Hart, did it acquire any title by virtue of the attempted transfer of the lumber to it by the Cairo Lumber Company. That company had no title, and nothing appears, by reason of which, Hart was estopped to deny that it had.

The bill of the Chemical National Bank against the Cairo Lumber Company has not been answered. It contains an averment that the defendant company owns other valuable property in this state, which should be taken in charge by the court and distributed among creditors. We strongly suspect that this averment is not true. We cannot, in this controversy, make any disposition of that cause as a separate suit; but so much of the bill in that cause as seeks to distribute the proceeds of the property involved in this controversy is, of course, finally settled by the decree herein.

The agreement made between Hart and the First National Bank of Memphis, created neither a mortgage nor a lien upon the property, and as against the creditors of Hart, with or without notice, interposed no defense against their proceedings. As we have said, Hart continued the owner of the lumber, and his right to deal with it as such was not impaired by reason of his executory contract with the Cairo company, for it had no title to, or interest in, the lumber. The contract with Hart was a mere executory agreement, for breach of which the only remedy of the bank was by ordinary suit. No lien, legal or equitable, was created. *Allen* v. *Montgomery*, 48 Miss., 101; *Alexander* v. *Berry*, 54 Miss., 422. The chancellor committed the grave error of intervening by injunction between the

debtor, Hart, and his personal creditors. In a bill properly brought by him to draw for final decision in the chancery court all controversies existing between himself on the one hand and those seeking to subject his property to the claims of a third party, he added averments, the only effect of which could be to shelter his property from his own creditors. If it be conceded, as the result has shown, that creditors of the Cairo Lumber Company were unjustly attempting to subject his property to their demands against the company, this furnishes no ground for complaint against his own creditors, who were lawfully attempting to collect what was due to them by him by resorting to his property. After he had been restored to the possession of his own, upon entering into bond to restore the lumber, or its value, to the receiver, if the litigation should result in favor of the creditors of the Cairo Lumber Company, the property was no longer *in custodia legis.* The court had parted with its possession, and no longer had any concern as to what should become of the property which was thereafter represented by the bond given by Hart. If the property in his hands was seized by his creditors and sold to satisfy their just demands against him, he has no cause of complaint, for he has had the same benefit of the property as he would have had if he had sold the property and applied the money to his own use by paying it to his creditors. The code provides that when personal property has been seized under attachment and replevied by the defendant or a claimant, he shall not be deprived of the property under a subsequent attachment against the same defendant, returnable to the same court to which the first writ is returnable. Code 1892, § 149. Hart does not fall within the protection of this statute, for he had given bond to have the property forthcoming to answer the demands of the creditors of the Cairo Lumber Company, and not to those of his own creditors. If his creditors were not permitted to attach the property as his, he might bid them defiance by disposing of it for money under the shelter of the chancery court,

for it cannot be true that, being successful in his litigations
with the creditors of the Cairo Lumber Company, and thereby
being discharged of liability on his bond to them, a recovery
thereon might be had by any one of his creditors, none of
whom were parties to the suit in which it was given. The
chancery court had nothing to do with the creditors of Hart.
No fact is averred in his bill by reason of which their efforts
to subject his property to their just demands should have been
thwarted. The judgment at law recovered by the Chemical
National Bank is conclusive against Hart. His injunction re-
strained the bank only from interfering with the possession of
the lumber, a lien on which had been properly secured by at-
tachment before the injunction. was issued. He should have
defended the suit at law on the merits, and, having failed to do
so, he is precluded by the judgment there rendered.

This brings us to the concluding questions involved in the
cause, which are whether the acceptances and notes held by
the Chemical National Bank of Chicago, and sued on in its suit
by attachment in chancery, and those held by the First National
Bank of Memphis, are valid as against Hart. As to those
held by the Chemical National Bank, it appears that some are
the notes given by Hart to the Cairo Lumber Company in the
transaction relative to the purchase for him, by it, of the tim-
ber rights from the Everman company; some are accommo-
dation paper accepted by Hart for the Cairo company, and the
history of others may not be known. The bank acquired
the paper for value, without notice of any defect of consider-
ation or otherwise, and before maturity. Under these circum-
stances, we are of opinion that the paper is obligatory on Hart,
for several reasons: First, the statute, while forbidding for-
eign corporations from doing business in the state without com-
pliance with its conditions, does not declare by express terms
that any contracts made with delinquent corporations shall be
void, nor does it denounce as invalid any securities given by or
to it under such contracts. The English, and some of the.

American, statuets against usury and gaming declared that all assurances and securities given in consideration thereof should be void. Under such declarations it has been very generally held that negotiable paper, even in the hands of a *bona fide* holder, are void, because of the language of the law. But where only the contract is declared void, and there is no declaration of nullity against securities, it is held that, while, as between the parties and those taking with notice or after maturity, no recovery can be had, a *bona fide* holder will be protected. Chitty on Bills, 81–95; Byles on Bills, 145; Daniel on Neg. Insts., § 198; Randolph on Com. Paper, 532. Second, the statute of Tennessee has relation, we think, only to foreign corporations doing business in that state as domestic corporations would do who had a fixed and definite business with the people, or in relation to property therein situated. The public policy of the state, in maintenance of which the act was passed, was to compel foreign corporations desirous of engaging in business in that state as domestic corporations were engaged, to supply to the public full information touching its corporate organization, capital and powers, to the end that those dealing with them might be protected against improvident contracts. A corporation engaged in dealing with citizens of other states in reference to property situated elsewhere than in the state of Tennessee, and as to which persons and property that state has no concern, cannot be said to be engaged in business in the state of Tennessee, within the meaning and purpose of its statute, even though the parties meet in that state and there agree upon the terms of the contract relative to such business. This we understand to be the construction of its statute by the supreme court of that state in its most recent decisions. *Bank* v. *Duncan*, opinion by Chancellor Snodgrass (with which we have been favored by counsel), affirmed by supreme court; *Milling Co.* v. *Garten*, 93 Tenn., 590. See, also, *Beard* v. *Publishing Co.*, 71 Ala., 60; *Collier* v. *Davis*, 94 *Ib.*, 456; *Insurance Co.* v. *Sawyer*, 44 Wis., 387; *In re A. & C. R. R. Co.*, 9 Blatchford,

390, and other cases cited by counsel for appellant, the Chemical National Bank. We are, therefore, of opinion that the claims sued on by the Chemical Bank in its attachment in chancery are valid against Hart. For the same reasons, and because, also, Hart is bound, not as maker, but as indorser on the bills held by the First National Bank of Memphis, the same are binding on him. If these bills had been nullities in their inception, he would, nevertheless, have been bound by his indorsement, which created a new and independent contract between him and the bank. Daniel on Neg. Insts., § 673. It results that the decree of the court below must be affirmed on the appeal of the following named parties: Evanston National Bank, E. C. Atkins & Co., I. Goldsmith & Bro., J. E. P. Baxley, Barksdale, Denton & Co., Strange & McClellan, First National Bank of Memphis, and upon the appeal of the Chemical National Bank, so far as it relates to the dismissal of its bill in cause No. 856, in which the Chemical National Bank exhibited a bill against the Evanston Bank for the purpose of sequestering the lumber as the property of the Cairo Lumber Co. and for a dissolution of that corporation and administration of its assets, and on the cross appeal of Hart and the First National Bank as against the Livermore Foundry & Machine Co. It will be reversed upon the appeal of the Chemical National Bank in so far as it denied to the appellant satisfaction of its judgment at law against Hart, and, also, in so far as it dismissed the attachment in chancery, and upon the appeal of Sledge & Norfleet.

After the delivery of above opinion, counsel for the Chemical National Bank moved for a decree here against Hart and the sureties on his forthcoming bond for the amount of its judgment at law against Hart, and for the amount of its demand set up in its attachment in chancery. This motion is resisted by Hart and by the First National Bank of Memphis, and by the sureties on his bond, who contend that there is no sufficient evidence in the record of the value of the lumber. In the

attachment at law of the Chemical National Bank, the lumber seized was valued by the officer at the sum of $3,528, and that seized under the writ of the Livermore Foundry & Machine Company at $725. The date of the writ and levy, in the case of Sledge & Norfleet, is not shown, nor the value of the lumber seized. The valuation of the lumber in the cases of the Chemical National Bank and Livermore Foundry & Machine Company, exceeds the sums of the judgments to which those parties and Sledge & Norfleet are entitled. But counsel for Hart contend that the evidence shows that the lumber has been since sold for $5,506.35, at an expense of $2,477.59 for getting same into the market and disposing thereof, whereby, as is claimed, it appears that the real value of the lumber was only $3,028.76, and for this sum only, counsel contend, are Hart and his sureties liable on the forthcoming bond. It appears from the evidence that, after the property had been levied on, the First National Bank of Memphis, being advised that the property in Hart's possession was yet *in custodia legis*, and that the court would allow for any outlays made in the preservation, insurance and marketing the lumber, laid out the said sum of $2,477.59 for such purposes, and that the same had been allowed by the chancellor. This was manifestly erroneous. The property, as we have said, was liable, in Hart's hands, to his creditors, unless it should be found to be subject to the liens fixed upon it by the creditors of the Cairo Lumber Company, and we have held that it was not. If Hart preserved and insured and cared for the property, after receiving possession thereof under his bond, he was doing so as owner, and not as an officer of the court. If, however, the price at which the lumber was sold, on the cars at Evansville, was a fair test of its market value, the cost of transporting and loading it on the cars would have to be deducted in order to determine its value at the place it was when seized. We have, for the purpose of ending as far as may justly be done, this complicated and expensive litigation, looked over the account of outlays made by the bank. Items

therein to the amount of $960 are clearly not proper charges in determining the value of the lumber. Whether we accept the valuation of the lumber as fixed by the sheriff ($3,528 + $775=$4,303), or that derived from its sale, less what may be conceded to be proper charges (say, $5,500.00—[$2,477.59—$960.00=$1,517.04]=$3,982.96), the result is practically the same, for the amount of the proper judgment is:

Livermore Foundry & Machine Company _____$  775 47
Sledge & Norfleet _____    92 64
Chemical National Bank_____ 3,151 00
                                                         _____
                                                         $4,019 11

This would leave only the sum of $36.15 in excess of the lowest valuation. Counsel for the Chemical Bank may, by deducting that sum from the judgment of that party, have final decree here.

The cause of the *Chemical Bank* v. *Hart*, attachment in chancery, will be remanded, with instructions to the court below to render decree therein for the proper amount, to be satisfied by sale of the property attached and not replevied, and by decree against the bond executed in that cause for the value of the lumber, as it may be found, less the amounts for which decrees are here made.

*Reversed, and decree here.*