GERMANY v. UNITED STATES FIDELITY & GUARANTY CO.

(Division B. Jan. 22, 1934.)

[152 So. 275. No. 30903.]

J. C. Feduccia and W. B. Alexander, Jr., both of Cleveland, for appellant.

Shands, **Elmore** & **Causey**, of Cleveland, for appellee.

Argued orally by **J. C. Feduccia**, for appellant, and by **Dugas Shands**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action in the court of a justice of the peace of Bolivar county against appellant on an account assigned to it by M. L. Virden Lumber Company, in the sum of fifty-three dollars and one cent. There was a trial resulting in a judgment in that court in favor of appellant. From that judgment appellee appealed to the circuit court, where there was a trial de novo, resulting in a judgment in appellee's favor. From that judgment appellant prosecutes this appeal.

M. L. Virden Lumber Company was a partnership with its principal place of business in Greenville in this state. It was engaged in the sale of lumber and building materials and, in connection therewith, constructing buildings. It had several branches for carrying on its business, one of them being in Shaw in Bolivar county. J. E. Frith was in charge of its office at Shaw. He was authorized to sell the lumber and building materials of his principal and to collect and give receipts therefor, and in the process of collection to endorse checks to his principal; he was also authorized to make building contracts in the name of and for his principal.

M. L. Virden Lumber Company had an auditor, R. T. Love, who went around two or three times a year to the lumber company's different branches and audited their books, accounts, and transactions. In January, 1931, he audited the branch business at Shaw and found Frith short with the lumber company in the sum of several hundred dollars. Appellee had made a fidelity bond for Frith for the benefit of the lumber company, guaranteeing his honesty in the conduct of the affairs of the company. M. L. Virden Lumber Company thereupon made proof of Frith's shortage, presented it to appellee, and

appellee allowed it and paid it. Thereupon the lumber company assigned to appellee, in order to enable the latter to reimburse itself as far as it could, its claim against Frith for such shortage and certain accounts due it in Shaw and vicinity by persons who had purchased building materials at that place through Frith, and which the lumber company claimed had not been collected by Frith; among these claims was the one here sued on for fifty-three dollars and one cent. Upon demand appellant refused payment of the claim upon the ground that he had paid it to the lumber company through Frith while the latter was in charge of its Shaw branch. When Frith was found short the lumber company discharged him and put another man in his place. Appellant admitted that he had owed the account sued on but claimed he had paid it. In other words, his defense was payment.

On the trial only two witnesses testified, appellant and the lumber company's auditor, Love, and they were introduced as witnesses by appellee. While on the witness stand, appellant testified that he had paid the account sued on in full to Frith, and presented a receipt signed by Frith, acknowledging its payment. This receipt was written on a sheet of paper containing the letterhead of the lumber company, but was only signed "Frith." The testimony given by both appellant and Love tended to show that this was the usual form of receipt given by Frith for the lumber company. Appellant testified that he did not know how much of the fifty-three dollars and one cent was paid in cash and how much was paid by Frith for him by "butting accounts." He explained what he meant by "butting accounts" as follows: Appellant was the proprietor of, and conducted, a drug store in Shaw; from time to time Frith purchased goods from appellant's store on credit; these purchases were not entered on appellant's books, but the amounts were charged on tickets; appellant at different times had bought materials through Frith from the lumber company's Shaw

branch; these purchases were charged by Frith on the books of the company kept by him; when Frith made his rounds collecting for the lumber company, he would sometimes find that appellant was indebted to the lumber company, and he (individually) indebted to appellant; when this occurred they would offset the accounts against each other, Frith agreeing to pay the lumber company the amount due it by appellant. In other words, Frith would pay his account with appellant, in so far as it would go, with what appellant was due the lumber company, and appellant would pay his account with the lumber company, in so far as it would go, with Frith's account with him.

Appellant's testimony tended to show that this was a custom at the lumber company's Shaw office. As to the particular account sued on, fifty-three dollars and one cent, for which appellant held the lumber company's receipt, he was unable to remember how much, if any, of this amount was paid by ''butting accounts'' in the manner stated. He admitted that part of it might have been paid in that manner and part in cash.

The lumber company's auditor, Love, testified that in auditing the branches of the company he had at different times come across accounts of various persons indebted to the company which had been settled in this manner. Appellant testified that he had settled, in that manner, some of his other accounts with Frith for his principal. Love used this language: ''What Mr. Frith would do, would take the customer's accounts that he owed, he would give him credit for it and charge it to his (the manager's) personal account, at the end of the month would offset his personal account from his monthly salary. Frith and several of them have done that. The fact of the business, it has been customary to a certain extent in all the lumber yards.'' He testified further that he did not know of the lumber company making any objection to its manager ''swapping accounts'' in this manner.

All the evidence of this custom was objected to by appellee and ruled out by the court. The court sustained appellee's motion to exclude all the evidence and direct a verdict for it.

The burden of proof was upon appellant to establish his defense of payment. His original liability for the account was not in issue. The plea of payment is a plea of confession and avoidance. It seeks to avoid the confession of original liability by showing its payment, and this must be shown by a preponderance of the evidence. Sivley v. Williamson, 112 Miss. 276, 72 So. 1008; Greenburg v. Saul, 91 Miss. 410, 45 So. 569; 48 C. J., sec. 160, p. 675; 21 R. C. L., p. 119. Payment must be made in money, unless the creditor has either expressly or impliedly agreed to accept something else. The evidence showed without conflict that appellant had paid the account sued on to Frith. The receipt he held from the lumber company showed that, but he admitted on the witness stand that a part of it might have been paid, not in money but by "butting accounts," as above set out. That being true, appellant failed to meet the burden of proving payment, unless such a method of payment was either expressly or impliedly authorized by the lumber company. Appellant undertook through his own evidence and through that of Love, the auditor of the lumber company, to show that that manner of payment was impliedly authorized by the lumber company; that it was a common course of dealing with its customers.

As stated, this evidence was ruled out by the court. Appellee contends that there was no error in ruling it out because it failed to meet the requirements of the law. To sustain its contention appellee relies upon the principles laid down in Shackelford v. New Orleans, Jackson & Great Northern R. R. Co., 37 Miss. 203; Hart v. Foundry Co., 72 Miss. 809, 17 So. 769; 21 R. C. L., p. 856. Those principles are that the doctrine of custom and usage, in order to be binding upon persons in their deal-

ings with each other, must be shown to have prevailed in the particular locality or generally in relation to the subject-matter of their dealings, and that, therefore, they intended and understood that such custom should be the law of their actions. The custom or usage must be known to them either in fact or by implication. The evidence tended to show that this usage and custom of "butting accounts" had been carried on at all the different branches of the lumber company, and the lumber company had never made any objection to it. Love's testimony indicates that the lumber company either knew of it, or could have known of it with any sort of diligence. In other words, that the lumber company was affected with at least implied notice of the custom.

It follows from these views that we think it was a question for the jury whether the lumer company authorized the settlement of this account in the manner in which the evidence indicated it was settled.

Reversed and remanded.